IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAD KHORAKI,

    Plaintiff,

v().                                        Civil Action No. 3:22cv70

DERRICK LONGORIA,
et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANT JOSEPHINE WALLACE'S MOTION TO DISMISS (ECF No. 33) and the MOTION TO DISMISS (ECF No. 35) filed by Josephine Wallace. Both motions to dismiss are addressed to COUNT II of the AMENDED COMPLAINT. See Am. Compl. at 11-12 (ECF No. 29). In one motion (ECF No. 33), Wallace relies on Fed. R. Civ. P. 12(b)(6). Therein she contends that COUNT II (a claim for Intentional Infliction of Emotional Distress ("IIED")) is defectively pleaded under Virginia law governing IIED claims. In the other motion (ECF No. 35), Wallace seeks dismissal, asserting that COUNT II is barred by the statute of limitations. For reasons neither explained nor readily apparent, this motion (ECF No. 35) relies on Fed. R. Civ. P. 7(b). This rather strange procedural anomaly will be addressed later.

Having considered the AMENDED COMPLAINT (ECF No. 29), the motions, and the supporting and opposing briefs, Wallace's MOTIONS TO DISMISS (ECF Nos. 33, 35) will be denied for the reasons set forth below.

**BACKGROUND**

The matter arises from an alleged unlawful arrest and criminal prosecution of Dr. Jad Khoraki, a 30-year-old physician, by Defendants Derrick Longoria, a police officer employed by the City of Richmond Police Department, and Jaime Blackmon, a Deputy Commonwealth's Attorney for the City of Richmond. Am. Compl. ¶¶ 6, 7 (ECF No. 29). Khoraki was arrested on January 26, 2020 and February 6, 2020 for charges based on allegedly false reports made by Wallace.

**I. Factual Background**

The Amended Complaint recites that, after meeting on a dating application ("app"), Khoraki and Wallace engaged in a brief relationship beginning in March 2019 and ending in December 2019. Id. ¶ 12. Shortly thereafter, Wallace made a series of reports to the Richmond Police Department, alleging various instances of stalking and assault by Khoraki. Id. ¶ 13. On January 21, 2020, Wallace told Longoria that she had been assaulted by Khoraki on January 20, 2020. See Ex. 1 (ECF No. 42-1). Then, Wallace informed Longoria that Khoraki had stalked her between January 23 and 25, 2020. Based solely on Wallace's

2

statements, arrest warrants were issued by a magistrate. Khoraki was arrested on January 26, 2020. See Ex. A (ECF No. 29-1). Khoraki was released on bond following the January 26th arrest.

Thereafter, on January 29, 2020, Wallace met with Longoria claiming additional, more serious allegations. In particular, Wallace accused Khoraki of assaulting, strangling, and threatening her with a firearm on September 15, 2019.[1] Id. Relying solely on Wallace's allegations, on January 31, 2020, Longoria obtained warrants. Wallace also petitioned the Richmond General District Court for a protective order against Khoraki. Am. Compl. ¶ 21 (ECF No. 29).

Based on these new allegations, Khoraki was arrested again on February 6, 2020 and held without bond in the Richmond City Justice Center. Thereafter, Khoraki's counsel learned from Chesterfield County Assistant Commonwealth's Attorney Erin Barr and Chesterfield Police Detective Christopher King that Wallace had a history of making false allegations against men, including accusations against another man resulting in a false rape charge

---

[1] It is alleged that she mentioned another stalking claim. See Ex. B (ECF No. 29-2); Am. Compl. ¶¶ 17, 19 (ECF No. 29); Ex. E (ECF No. 32-5). However, stalking is not apparent in the reporting officer's narrative in the INCIDENT/INVESTIGATION REPORT. See Ex. B (ECF No. 32-5).

that was dismissed and expunged. Id. ¶¶ 28, 29.[2] On February 12, 2020, Khoraki's defense counsel advised Blackmon and Longoria of Wallace's history of making false reports against men whom she had met on a dating app. Counsel also offered evidence that the current allegations against Khoraki were fictitious. Khoraki's counsel also provided contact information for Barr and King so that Blackmon and Longoria could confirm what counsel had been told. See Ex. D (ECF No. 29-4).

On February 13, 2020, Khoraki's counsel provided a report by King that detailed Wallace's history of making false allegations dating back to 2018. Ex. E (ECF No. 29-5). Notably, King's report highlighted that Wallace previously had made identical allegations against a man she met on a dating app who assaulted her, stalked her, held a gun to her head, and threatened her.[3] Am. Compl. ¶¶ 30, 31 (ECF No. 29). Of course, those allegations closely tracked what Wallace had said about Khoraki.

On February 14, 2020, Khoraki's counsel presented the report about Wallace at the bond appeal hearing. Id. ¶ 33. At some point before that hearing, Longoria and Blackmon both

---

[2] In general, Wallace states that she lacks sufficient information to admit or deny any of these allegations. ANSWER ¶¶ 28, 29 (ECF No. 22). However, Wallace denies that she made any fabricated reports related to Khoraki. See id. ¶ 2.

[3] The report also indicated that Chesterfield Detectives had proof that Wallace had inflicted visible injury upon herself.

4

reviewed the Chesterfield report containing the previous false allegations made by Wallace. Longoria agreed that the charges against Khoraki should be "nolle pros" and that he should be released. See Ex. G (ECF No. 32-7). Remarkably, Blackmon opposed bond because the "allegations [were] very violent" even though she was familiar with King's report. Ex. C at 11 (ECF No. 29-3). After the bond appeal hearing, Khoraki was granted a $10,000 secured bond and ordered to be released on an electronic monitor. Am. Compl. ¶ 22 (ECF No. 29).

On February 27, 2020, the court dismissed by nolle prosequi the charges against Khoraki. Id. ¶ 36. The remaining charges and the preliminary protective order were dismissed on March 10, 2020. Id. ¶ 37.

In this action, Khoraki seeks damages for the injuries that he incurred as a result of the alleged malicious prosecution by Longoria, Blackmon, and Wallace as well as for the IIED caused by Wallace. Id. ¶ 39. Khoraki claims that: the "false accusations, arrest, and incarceration traumatized [him], caus[ed] irreparable harm to his personal and professional life," id. ¶ 38; he was humiliated when "police officers contacted his employer, arrested him at a friend's residence, and charged him with serious violent felonies" id.; his employer and colleagues have treated him differently since his arrest, id.; he "suffered extreme emotional distress during his wrongful

5

arrest and incarceration" and "incurred legal fees and professional and personal damage to his reputation," id.; and "requires therapy and suffers from nightmares, flashbacks, extreme stress and fear." Id.

The Amended Complaint asserts the following claims: COUNT I (against Longoria and Blackmon) Malicious Prosecution by way of 42 U.S.C. § 1983; COUNT II (against Wallace), a State Law Claim for IIED; and COUNT III (against Longoria, Blackmon, and Wallace), a State Law Claim for Malicious Prosecution. Khoraki seeks $5,000,000.00 compensatory damages, $1,000,000.00 in punitive damages from Longoria and Blackmon as well as $3,000,000.00 from Wallace.

## II. Procedural History

Khoraki filed the COMPLAINT in this case on February 2, 2022. Compl. (ECF No. 1). On March 8, 2022, Khoraki filed the AMENDED COMPLAINT (ECF No. 29), which is the operative document as to which Wallace's motions seek dismissal.[4] As explained at the outset, Wallace filed two motions seeking dismissal of COUNT II. One motion (ECF No. 33) relied on Fed. R. Civ. P. 12(b)(6) asserting that COUNT II was defectively pleaded. The other

---

[4] On March 22, 2022, Wallace filed two MOTIONS TO DISMISS (ECF Nos. 33, 35) and accompanying memoranda (ECF Nos. 34, 36), which are the subject of this opinion. Khoraki responded on April 5, 2022. See Pl.'s Resp. to Def. Mot. Dismiss (ECF No. 48); Mem. Supp. Pl.'s Resp. Def. Wallace's Mot. Dismiss (ECF No. 49). Wallace did not reply.

6

motion (ECF No. 35) cites Fed. R. Civ. P. 7(b), which simply provides that motions are allowed in pleadings. Stranger still, that motion relies on the statute of limitations which is an affirmative defense that Wallace did not plead.

Ordinarily, the defense of the statute of limitations cannot be presented in a motion seeking dismissal under Fed. R. Civ. P. 12(b)(6).[5] See Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations"). However, where the bar of the statute of limitations is apparent on the face of the complaint, the bar may be presented in a motion under Fed. R. Civ. P. 12(b)(6). See Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint."). Wallace's brief in support of her MOTION TO DISMISS (ECF No. 35) seems to take that course. See Def. Wallace's Mem. Supp. Mot. Dismiss (ECF No. 36).

Therefore, both motions are appropriately analyzed under Fed. R. Civ. P. 12(b)(6). To that task, we now turn.

---

[5] It is most often presented in a motion for summary judgment under Fed. R. Civ. P. 56.

7

## DISCUSSION

### I. Standard of Review Governing Fed. R. Civ. P. 12(b)(6): Failure to State a Claim

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "tests the sufficiency of a complaint." Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). To survive a motion to dismiss, the factual allegations set forth in the complaint must be sufficient "'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim is 'plausible on its face,' if a plaintiff can demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Nevertheless, "[a] complaint should not be dismissed pursuant to Rule 12(b)(6) . . . unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief." Chapman v. Clarendon Nat'l Ins. Co., 299 F. Supp. 2d 559, 562 (E.D. Va. 2004).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, 891 F.3d at 145.

8

However, courts need not "accept as true a legal conclusion couched as a factual allegation." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (quoting Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014)). And, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Although a court's review is generally limited to the allegations in the complaint, where a copy of a written instrument is attached as an exhibit to the complaint or incorporated by reference, the instrument is part of the complaint and a court may consider it. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); see also Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

A. **Intentional Infliction of Emotional Distress: Legal Standing**

Wallace contends that Khoraki has failed to adequately state a claim for IIED. The elements of IIED in Virginia are: "[1] the wrongdoer's conduct is intentional or reckless; [2] the conduct is outrageous and intolerable; [3] the alleged wrongful

9

conduct and emotional distress are causally connected; and, [4] the distress is severe." Perk v. Worden, 475 F. Supp. 2d 565, 570 (E.D. Va. 2007) (quoting Russo v. White, 241 Va. 23, 26 (1991)) (internal quotations omitted) (modifications in original); see also Womack v. Eldridge, 215 Va. 338 (1974). Wallace's brief does not indicate which element(s) of the claim that she thinks to be inadequate. Instead, the brief rather pithily posits that Khoraki "has failed to allege any facts that his emotional distress was so severe that no reasonable person could be expected to endure it" and that he has failed to plead with "specificity". Def.'s Mem. Supp. Mot. Dismiss Failure State Claim 2 (ECF No. 34).

Khoraki has alleged all of these elements in his Amended Complaint. It is true, as Wallace argues, that "IIED claims are disfavored in Virginia," but the Amended Complaint pleads sufficient factual allegations to support COUNT II. Marcantonio v. Dudzinski, 155 F. Supp. 3d 619, 632 (W.D. Va. 2015).

First, Khoraki specifically pleads that "Ms. Wallace, with the specific purpose of inflicting emotional distress upon Dr. Khoraki, fabricated false allegations to cause his arrest, detention, and prosecution." Am. Compl. ¶ 61 (ECF No. 29). These allegations resulted in his first arrest on January 26, 2020 and again on February 6, 2020, after Wallace made more serious claims against Khoraki after he had been released on

10

bond. Khoraki also pleads that he was humiliated as a result of these arrests and that Wallace "knew, or should have known, that the false accusations would likely result in harm to the plaintiff . . . include[ing] emotional distress." Id. ¶¶ 62, 63.

Second, Khoraki pleads that "Ms. Wallace's conduct was so outrageous and intolerable that it offended the generally accepted standards of decency and morality." Id. ¶ 64. In Virginia, "tortious or criminal intent is insufficient, and malice or conduct worthy of punitive damages is likewise insufficient." Perk, 475 F. Supp. 2d at 570. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Restatement (Second) of Torts § 46 cmt. d (1965)) (internal quotations omitted).

In the present case, Wallace filed allegedly false reports accusing Khoraki of domestic abuse. Filing false police reports has been deemed outrageous and intolerable under Virginia law; in fact, Virginia has criminalized the conduct:

11

> It shall be unlawful for any person (i) to knowingly give a false report as to the commission of any crime to any law-enforcement official with intent to mislead; (ii) to knowingly, with the intent to mislead a law-enforcement agency, cause another to give a false report to any law-enforcement official by publicly simulating a violation of Chapter 4 (§ 18.2-30 et seq.) or Chapter 5 (§ 18.2-77 et seq.); or (iii) without just cause and with intent to interfere with the operations of any law-enforcement official, to call or summon any law-enforcement official by telephone or other means, including engagement or activation of an automatic emergency alarm.

Va. Code § 18.2-461.

What is more, the Amended Complaint alleges that Wallace had made substantially similar, and baseless, charges against another man. Also, it is alleged that she has a history of making baseless allegations. Therefore, Wallace's conduct falls evenly within Virginia's definition of outrageous conduct.

Third, Khoraki has pled that the alleged extreme emotional distress inflicted upon him by Wallace is both causally and directly connected to her false allegations. Khoraki states that Wallace's false allegations first led to humiliation upon his initial arrest, which grew into severe distress when he was Khoraki was arrested a second time and detained for eleven days in jail. Khoraki continues to seek therapy due to the Post Traumatic Stress Disorder he has experienced from being wrongfully accused, arrested, and imprisoned. Khoraki further

avers that the allegations and arrests have "impacted his work and his interpersonal relationships." Mem. Supp. Pl.'s Resp. Def. Wallace's Mot. Dismiss 6 (ECF No. 49). Specifically, Khoraki pleads that:

> The false accusations, arrest, and incarceration traumatized Dr. Khoraki, causing irreparable harm to his personal and professional life. Dr. Khoraki suffered humiliation when police officers contacted his employer, arrested him at a friend's residence, and charged him with serious violent felonies. Since his arrest, Dr. Khoraki has been treated differently by his employer and colleagues. Dr. Khoraki suffered extreme emotional distress during his wrongful arrest and incarceration. He incurred legal fees and professional and personal damage to his reputation. To date, he requires therapy and suffers from nightmares, flashbacks, extreme stress and fear.

Am. Compl. ¶ 38 (ECF No. 29). Causation is quite clearly and sufficiently alleged.

Fourth, Khoraki specifically alleges that he "did in fact suffer severe emotional distress" due to Wallace's "false, malicious, and vindictive conduct", which led to his arrest, deprivation of freedom, and prosecution and now, his ongoing therapy and repairing of personal relationships. Id. ¶ 65. Khoraki pleads that he "requires therapy and suffers from nightmares, flashbacks, extreme stress and fear." Id. ¶ 38.

Beyond serious question, COUNT II satisfies the threshold for pleading a legally sufficient claim of IIED in Virginia.

13

Moreover, the United States Court of Appeals for the Fourth Circuit has held that in federal court, under Fed. R. Civ. P. 8, plaintiffs need not plead emotional distress with the particularity required in Virginia courts. Hatfill v. New York Times Co., 416 F.3d 320, 337 (4th Cir. 2005) (holding that fairly simple allegations of severe emotional distress were sufficient to state a claim for IIED in a federal district court). Therefore, Khoraki has adequately stated a claim for IIED in COUNT II, and Wallace's MOTION TO DISMISS (ECF No. 33) COUNT II will be denied.

**B. Intentional Infliction of Emotional Distress: The Statute of Limitations**

In the MOTION TO DISMISS (ECF No. 35), Wallace moves to dismiss COUNT II as barred by the statute of limitations under Va. Code § 8.01-248. As explained above, dismissal for that reason is conceptually possible under Fed. R. Civ. P. 12(b)(6) if the bar appears on the face of the Amended Complaint, and, albeit inartfully stated, that is what Wallace seems to be doing in the brief in support of the MOTION TO DISMISS (ECF No. 35). See Def. Wallace's Mem. Supp. Mot. Dismiss (ECF No. 36).

As a common law tort, IIED does not have a designated cause of action timeframe assigned to it, but rather is limited by the general statute of limitations applicable to personal actions without a defined limitation timeframe. See Cobbs v. First

14

Transit Comp., No. 6:16-cv-15, 2016 WL 7336562, at *8 (W.D. Va. Dec. 16, 2016). Virginia law states:

> Every personal action accruing on or after July 1, 1995, for which no limitation otherwise prescribed, shall be brought <u>within two years after the right to bring such action has accrued</u>.

Va. Code § 8.01-248 (emphasis added). Wallace argues that Khoraki's IIED claim is time-barred under this statute because she made the criminal accusations against him on January 31, 2020,[6] and Khoraki filed his complaint on February 2, 2020. Def. Wallace's Mem. Supp. Mot. Dismiss 2 (ECF No. 36).

It is true that Khoraki filed the Complaint on February 2, 2022, which means that the statute of limitations bars his claim for IIED unless it accrued on or after February 2, 2020. The latest date the cause of action could have accrued was March 10, 2020, once Khoraki was released from all claims stemming from Wallace's allegations. As Khoraki notes in his response brief, under Virginia law, his IIED cause of action was suspended until then. Specifically, Section 8.01-229(K) of the Virginia Code recites, in relevant part:

---

[6] Note, the INCIDENT/INTAKE FORMS indicate that Wallace technically made the allegations on January 29, 2020. See Ex. E (ECF No. 32-5). The arrest warrant was not issued until January 31, 2022. See Ex. B (ECF No. 39-2).

15

> In any personal action for damages, if criminal prosecution arising out of the same facts is commenced, the time such prosecution is pending shall not be computed as part of the period within which such a civil action may be brought. For purposes of this subsection, <u>the time during which a prosecution is pending shall be calculated from the date of issuance of a warrant</u>, summons, or capias, the return of filing of an indictment or information . . . until the date of the final judgment . . . [or] the date of final disposition. Thereafter, <u>the civil action may be brought within the remaining period of the statute</u> or within one year, whichever is longer.

Va. Code § 8.01-229(K) (emphasis added). Consequently, Khoraki's claims were tolled beginning on January 25, 2020, when the first set of accusations was promulgated resulting in his criminal prosecution, and continued to be tolled until the charges were dismissed via nolle prosequi on March 10, 2020. Thus, Wallace's MOTION TO DISMISS (ECF No. 35) must be dismissed as Khoraki is well within the filing timeframe established by Virginia law for IIED claims.

### CONCLUSION

For the reasons cited above, Khoraki has adequately pled a claim for IIED and that claim has been brought within the statute of limitations under Virginia Law. Thus, the MOTIONS TO DISMISS (ECF Nos. 33 and 35) will be DENIED.

It is so ORDERED.

/s/ *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 12, 2022

16