## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

JAD KHORAKI,

     Plaintiff,

v.                                  Case No. 3:22cv70

CITY OF RICHMOND, *et al.*,

     Defendants.

## DEFENDANT JAIME BLACKMON'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

Defendant Deputy Commonwealth's Attorney for the City of Richmond Jaime Blackmon ("Ms. Blackmon"), by counsel, pursuant to Federal Rule of Civil Procedure 56, hereby submits this Memorandum in Support of her Motion for Summary Judgment.

## INTRODUCTION

Plaintiff Jad Khoraki ("Plaintiff") brings two claims for malicious prosecution, pursuant to 42 U.S.C. § 1983 and under Virginia law (Counts I and III), against Ms. Blackmon, based solely upon actions she took in court, as a prosecutor, during the course of the judicial phase of the case, in opposing Plaintiff's request for bond during a bond appeal hearing. By its Order dated August 2, 2022, the Court posed the following question:

Whether a prosecutor may be liable to a criminal defendant for "continuing the prosecution" of a case after knowledge of "exculpatory material," which calls into question the veracity of the complaining victim witness. Ms. Blackmon allegedly:

(a) Refused to dismiss the charges against Plaintiff presented in the January 31, 2020 arrest warrant; and

(b) Opposed Plaintiff's bond appeal, and, in so doing, made statements to the court at the bond appeal hearing (Second Am. Compl. at Ex. C, at 12:20-13:2 (ECF No. 60-3 at 13-14)) that are alleged to be untrue and inaccurate respecting whether Detective Longoria

was investigating more charges made by Josephine Wallace ("Wallace") against Plaintiff.

The Court should grant Ms. Blackmon's motion and enter judgment in her favor on both counts asserted against her in the Second Amended Complaint. First, even assuming for argument sake that Ms. Blackmon was a "bad actor," she enjoys absolute immunity from liability for both state and federal law malicious prosecution claims. Absolute prosecutorial immunity protects even the most egregious conduct by prosecutors, so long as that conduct is "intimately associated with the judicial phase" of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). It is undisputed that the alleged conduct here occurred squarely within the judicial phase of the Commonwealth's criminal prosecution. In short, no court has ever recognized that a prosecutor may be liable to a criminal defendant under Plaintiff's alleged "continuing prosecution" theory of liability, and this Court should decline Plaintiff's invitation to do so here.[1]

Second, the Court should grant summary judgment in Ms. Blackmon's favor on both malicious prosecution counts because Plaintiff's allegations, that Ms. Blackmon "refused" to dismiss the charges against Plaintiff after receiving the Chesterfield Report and opposed his bond appeal (and, in so doing, made alleged false statements), cannot form the basis for a claim for malicious prosecution as a matter of law.

Third, even if Plaintiff had pled a cause of action against Ms. Blackmon, the undisputed evidence in this case demonstrates that Ms. Blackmon acted in good faith and was never asked to dismiss the charges against Plaintiff presented in the January 31, 2020 arrest warrant. Rather, the undisputed evidence in this case demonstrates that, at the February 14, 2020 bond appeal hearing,

---

[1] Counsel for Ms. Blackmon has exhausted research of case law by the Supreme Court, Fourth Circuit, and Virginia courts, and has found no support for Plaintiff's continuing prosecution theory of liability against a prosecutor.

counsel for Plaintiff requested that Plaintiff be released on bond under specific terms. Plaintiff received the same material bond terms that he requested. Plaintiff never moved the court to dismiss the charges against him. The undisputed evidence demonstrates that Ms. Blackmon did not make any untrue or inaccurate statements to the court during the bond appeal hearing. Ms. Blackmon faithfully relayed what Detective Longoria has testified under oath that he told Ms. Blackmon on the telephone on February 13, 2020—that he was continuing to investigate a rape claim against Plaintiff.[2]

Finally, although Ms. Blackmon maintains that the doctrine of absolute prosecutorial immunity applies in this case without exception, should the Court consider the matter further, qualified immunity shields Ms. Blackmon from civil liability on the federal claim, and Virginia's good faith immunity shields Ms. Blackmon from any civil liability on the state law malicious prosecution claim. In short, Ms. Blackmon was presented with conflicting evidence and exercised her best judgment at the time of the bond hearing.

For each of these reasons, the Court should grant judgment in Ms. Blackmon's favor and dismiss the Second Amended Complaint against her with prejudice.

**SUMMARY OF ALLEGATIONS AGAINST MS. BLACKMON
IN THE SECOND AMENDED COMPLAINT**

Plaintiff alleges that he was in a relationship with Wallace from March 2019 until December 2019. Second Am. Compl. ¶ 12. In January 2020, Plaintiff alleges that Wallace made a "series of false reports to the Richmond Police Department, alleging various instances of stalking and assault." *Id.* ¶ 13. Based on these reports, a magistrate issued assault and battery charges against Plaintiff on January 21, 2020, *id.* ¶ 14, and a magistrate issued stalking charges against

---

[2] In fact, Ms. Blackmon merely stated that the Detective was investigating "other claims," without specifying that those other claims involved an accusation of rape.

Plaintiff on January 25, 2020, *id.* ¶ 15. Detective Longoria was assigned as lead investigator into these charges on January 21, 2020. *Id.* ¶ 16. Plaintiff was served and arrested on the assault, battery, and stalking charges on January 26, 2020. *Id.* ¶ 17 (referred to herein as the "first set of charges"). Plaintiff was granted bond and released. *Id.* ¶ 18.

On or about January 29, 2020, Wallace contacted Detective Longoria and informed him of "more serious allegations," including that Plaintiff "assaulted her, strangled her, and threatened her with a firearm" five months prior. *Id.* ¶¶ 19-20. On January 31, 2020, Detective Longoria obtained warrants against Plaintiff for felony strangulation, brandishing a firearm, assault and battery and stalking. *Id.* ¶ 23 (referred to herein as the "second set of charges"). Plaintiff was arrested on the second set of charges on February 6, 2020 and held without bond. *Id.* ¶ 24. Plaintiff appealed the bond denial to the Richmond Circuit Court on February 14, 2020, whereupon a $10,000 bond was granted. *Id.* ¶ 25. Plaintiff alleges that "as early as February 12, 2020," defense counsel advised Ms. Blackmon that the allegations against Plaintiff were false. *Id.* ¶ 30.

Plaintiff alleges that, prior to the February 14, 2020 bond appeal hearing, his criminal defense attorneys investigated the charges and determined that Wallace had a history of making false allegations, including previously against another man in Chesterfield County, Virginia. *See id.* ¶ 29. Plaintiff alleges that, "[a]s early as February 12, 2020," two days before the bond appeal hearing and two weeks after the final set of charges were initiated, his defense counsel conveyed to Ms. Blackmon and Detective Longoria Plaintiff's theory that the allegations had been "fabricated" based on Wallace's history of alleged false claims in a four-page written report (the "Chesterfield Report"). *Id.* ¶ 31.

During the bond appeal hearing on February 14, 2020, Plaintiff's criminal defense counsel summarized the contents of the Chesterfield Report in support of her request that Plaintiff be

granted bond—not in support of any request to dismiss the charges.  Counsel for Plaintiff stated the following on the record:

> When viewed in conjunction with the information from Chesterfield County, frankly, Judge, where I see this going is a dismissal, but that's a conversation for another day. At this point we are asking Your Honor to admit him to bond. Downstairs we actually asked for a GPS. Doctor Khoraki wants to be monitored because he is fearful for himself and for this proceeding any further.  So in light of all of that, Your Honor, we are asking the Court to essentially mirror the bond determination that was made by Judge McClenney, that is an eight thousand dollar secured bond, GPS monitor, and pre-trial and to surrender his passport.

*Id.* at Ex. C, at 8:23-9:3 (emphasis added).

In response, Ms. Blackmon agreed with Plaintiff's counsel's summary of the Chesterfield Report and stated that, in response to receiving the information regarding Wallace's credibility issues, Ms. Blackmon followed-up with Detective Longoria and Chesterfield Assistant Commonwealth's Attorney Barr.  *Id.* at Ex. C., at 9:16-22.

Ms. Blackmon summarized the nature of Wallace's allegations against Plaintiff and cited the "corroborating evidence" of Wallace's injuries, including "photographs that [Wallace] presented to Detective Longoria."  *Id.* at Ex. C., at 10:18-12:8.  The hearing transcript shows Ms. Blackmon advocate the Commonwealth's position that "out of an abundance of caution, based on the seriousness of the charges," bond be denied.  *Id.*  She further states, "And the only other thing that I will add is that the Richmond detective indicated that he is also investigating other claims that this victim made against the defendant, that he has not gotten far enough to determine if charges are warranted or not.  But he is continuing to investigate those, and that's where we are."  *Id*. at Ex. C, at 12:20-13:2; *see also* Second Am. Compl. ¶¶ 35-36.  The Second Amended Complaint lacks any allegation that this statement, or any statement made by Ms. Blackmon during the bond appeal hearing, was untrue or inaccurate.

The circuit court granted Plaintiff substantially the same bond that he sought, except that the court ordered $10,000 secured bond, as opposed to the requested $8,000 secured bond. *Id.* at Ex. C, at 13:21-14:6. The court ordered the same electronic monitoring and passport surrender terms requested by counsel for Plaintiff. *Id.* Plaintiff notes that this set of charges was dismissed by nolle prosequi on February 27, 2020, with the "remaining charges, along with the preliminary protective order" dismissed by the Richmond General District Court on March 10, 2020. *Id.* ¶ 39.

## PROCEDURAL BACKGROUND

On June 3, 2022, Plaintiff filed his Second Amended Complaint against Detective Longoria, Wallace, and Ms. Blackmon, asserting two claims against Ms. Blackmon for malicious prosecution under Virginia law and pursuant to 42 U.S.C. § 1983 (Counts I and III). (ECF No. 60). Ms. Blackmon moved to dismiss the Second Amended Complaint with prejudice. (ECF No. 64). Detective Longoria also moved to dismiss the Second Amended Complaint. (ECF No. 61).

Following a telephonic hearing, the Court granted Ms. Blackmon's Motion to Dismiss in part and denied it in part, without prejudice. (ECF No. 78). The Court granted Ms. Blackmon's Motion to the extent that, in Count I and Count III, it is alleged that Ms. Blackmon is liable for consulting with Detective Longoria in securing the January 31, 2020 arrest warrant or procuring the subsequent arrest on February 6, 2020. (ECF No. 78 at 2). The Court held that the record and briefing is incomplete and confusing respecting the claims of absolute and qualified immunity asserted by Ms. Blackmon, insofar as "she is alleged to have violated Plaintiff's constitutional rights by 'continuing the prosecution' of the case against Plaintiff when, after having full knowledge of the exculpatory material presented in the Chesterfield Report . . . [Ms.] Blackmon (a) refused to dismiss the charges against [Plaintiff] presented in the January 31, 202[0] arrest warrant; and (b) opposed [Plaintiff's] bond appeal, and, in so doing, made statements to the court

at the bond appeal hearing . . . that are alleged to be untrue and inaccurate respecting whether [Detective] Longoria was investigating more charges made by [Wallace] against [Plaintiff]." (ECF No. 78 at 2).

Pursuant to the Court's August 2, 2022 Order, Ms. Blackmon now moves for judgment as a matter of law on the remaining claims asserted against her in the Second Amended Complaint.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      On January 29, 2020, Wallace came to the City of Richmond Police Headquarters to meet with Detective Longoria.  **Exhibit 1** at 13:17-14:2, Deposition of Derrick Longoria; **Exhibit 2**, Incident/Investigation Report (ECF No. 60-2).

2.      During the meeting, Wallace reported to Detective Longoria that, on or about September 15, 2019, Plaintiff started a heated argument with her that turned physical.  During the altercation, Wallace told Detective Longoria that Plaintiff "punched her in the eye with a closed fist and then slammed her head against the door causing a knot."  Wallace further stated that Plaintiff "grabbed her around the throat with his hand."  When she started "seeing stars and everything was going black," she "kneed him in the groin."  "During the strangulation, [Plaintiff] told her, 'Bitch I will kill you.'"  **Exhibit 2** at p. 4; **Exhibit 1**, at 14:3-15:9, 15:16-23.

3.      Wallace also reported to Detective Longoria that, on a different date, Plaintiff showed Wallace a gun that he had in his house.  "[Plaintiff] then pointed it at her and stated, 'I can kill you with it.'"  Wallace told Detective Longoria that "she didn't take it as a joke because he had already assaulted her before and mad[e] threats to kill her."  **Exhibit 2**, at p. 4; **Exhibit 1**, at 15:10-15.

4.      Wallace showed Detective Longoria photographs of the injuries she sustained during the altercation.  **Exhibit 1**, at 16:8-22:15, and **Exhibit 3**, Longoria Exhibits 1-5.  Wallace

showed Detective Longoria the photographs on her phone, which contained timestamps demonstrating the photos were taken on or about the same day as the alleged abuse. **Exhibit 1**, at 14:10-14.

5.     During the same meeting, on January 29, 2020, Wallace disclosed to Detective Longoria that she was raped by Plaintiff on another occasion after a party. **Exhibit 1**, at 25:12-26:2. Due to the sensitive and potentially traumatic nature of the rape allegations, Detective Longoria decided to arrange a follow-up interview with Plaintiff, as well as Assistant Commonwealth Attorney Alison Martin and a victim witness representative, to further investigate the rape allegations. *Id.*

6.     On January 31, 2020, Detective Longoria presented a criminal complaint to a magistrate at the Richmond City Justice Center. **Exhibit 1**, at 30:10-14. The magistrate issued warrants for Plaintiff's arrest on the following charges: simple assault, strangulation, brandishing and stalking. **Exhibit 1**, at 30:15-22; **Exhibit 4**, Arrest Warrants dated January 31, 2020.

7.     The same day, on January 31, 2020, Detective Longoria generated a "Wanted" poster, for internal law enforcement distribution purposes only, which featured Plaintiff's photograph and identifying information, the charges against him, and the following summary: "Contact Detective D.W. Longoria at 804-510-4192 before placing in lock-up. This subject needs to be interviewed regarding a rape investigation. . . .." **Exhibit 5**, Wanted Poster dated January 31, 2020; **Exhibit 1**, at 30:23-31:22. The rape investigation noted in the "Wanted" poster referred to the rape allegations asserted by Wallace in their January 29, 2020 meeting. **Exhibit 1**, at 31:17-22.

8.     Plaintiff was arrested by the Richmond City Police Department on February 6, 2020. **Exhibit 4**; (ECF No. 60 ¶ 24.)

9.     Ms. Blackmon was assigned Plaintiff's criminal case on February 7, 2020.  **Exhibit 6**, at 10:22-11:3, 13:16-23, Deposition of Jaime Blackmon; **Exhibit 7**, at 3-4, Jaime Blackmon's Responses and Objections to Plaintiff's Interrogatories and Requests for Production.

10.    Ms. Blackmon appeared on behalf of the Commonwealth for Plaintiff's arraignment, on February 7, 2020, and Plaintiff's initial bond hearing in Richmond City General District Court, on February 10, 2020.  **Exhibit 6**, at 13:11-23.  Plaintiff was denied bond by the Richmond City General District Court. (ECF No. 60 ¶ 25.)

11.    On February 12, 2020 at approximately 5:47 p.m., counsel for Plaintiff, Ms. Miriam Airington, sent Ms. Blackmon and Ms. Reannen Bosworth an email, which copied Chesterfield County Assistant Commonwealth Attorney Erin Barr and Ms. Airington's colleague, Jennifer Quezada.  **Exhibit 8**, BLACKMON000001-2; *see also* **Exhibit 6**, at 15:15-21.  In the email, Ms. Airington informed Ms. Blackmon, "I've done a lot of legwork on this case and discovered that Josephine Wallace has a long history of fabricating these types of allegations.  I also spoke to Detective King in Chesterfield who is very familiar with Ms. Wallace.  In sum, she has falsely accused others of the exact same scenario she alleges here."  Ms. Airington framed her request to Ms. Blackmon as the following: "My request is that, at a minimum, we can get Dr. Khoraki out of jail while we sort this out. . . . Please let me know if you would agree to add the Manchester charges to the 8k secured bond with GPS that Judge McClenney ordered this morning."  No request was made to have the charges dismissed.  **Exhibit 8**.

12.    On February 13, 2020 at 9:15 a.m., Ms. Blackmon responded to Ms. Airington's email from the previous evening and stated that she was not inclined to agree to bond based on the police report and based on the fact that, while an alibi defense had been represented in court during the initial bond hearing, no evidence of that alibi defense had been introduced.  **Exhibit 9**,

BLACKMON000011-12. Ms. Blackmon stated that she would reconsider her position after speaking with Detective Longoria and Ms. Barr. *Id.*

13. On February 13, 2020 at 9:15 a.m., Ms. Blackmon forwarded the email she had received from Ms. Airington the previous evening to Detective Longoria and asked him to call her. **Exhibit 10**, BLACKMON00003-4; **Exhibit 6**, at 16:16-25.

14. Shortly thereafter, Detective Longoria and Ms. Blackmon spoke on the telephone for the first time regarding the charges against Plaintiff. **Exhibit 1**, at 33:1-9; **Exhibit 6**, at 13:24-14:1, 14:14-21.

15. Ms. Blackmon made notes during the call, contemporaneously documenting the substance of her conversation with Detective Longoria. **Exhibit 10**; **Exhibit 1**, at 33:10-34:15; **Exhibit 6**, at 34:11-35:17. During the telephone call, Detective Longoria told Ms. Blackmon that Wallace had made a rape allegation against Plaintiff, and that there may be warrants brought in regard to that allegation depending on how the investigation went. **Exhibit 1**, at 33:10-18; **Exhibit 6**, at 35:18-36:19 **Exhibit 7**, at 4-5; **Exhibit 10**. He also told Ms. Blackmon that Wallace had showed him photographs of her injuries, including bruises around her neck and bruises from the rape. **Exhibit 6**, at 35:18-24; **Exhibit 7**, at 4-5; **Exhibit 10**. Detective Longoria also stated that he would contact Detective King, with the Chesterfield County Police Department. **Exhibit 6**, at 23:8-14, 36:11-12; **Exhibit 10**.

16. On February 13, 2020 at 9:25 a.m., Detective Longoria sent Ms. Blackmon the photographs of Wallace's injuries that Wallace provided him during their January 29, 2020 meeting. **Exhibit 11**, BLACKMON000054-59. At 9:27 a.m., Detective Longoria also sent Ms. Blackmon a series of text messages that he received from Wallace that were sent by Plaintiff's ex-girlfriend. **Exhibit 12**, BLACKMON000060-66.

17.     On the morning of February 13, 2020, Ms. Blackmon spoke on the telephone with Ms. Barr regarding the allegations Wallace made against a different man in Chesterfield.  **Exhibit 6**, at 17:18-19:25.  Ms. Barr told Ms. Blackmon that Chesterfield disproved one set of allegations asserted by Wallace and was unable to corroborate a second set of allegations asserted by Wallace against the Chesterfield man.   **Exhibit 6**, at 17:22-19:25.  Ms. Blackmon contemporaneously documented the substance of her conversation with Ms. Barr.  **Exhibit 13**, BLACKMON000013.

18.     On February 13, 2020 at 4:29 p.m., Ms. Blackmon emailed Detective Longoria and informed him that she had discussed the case with Alison Martin, the supervising assistant Commonwealth's attorney for sexual assaults, and decided that Ms. Martin would handle the case because Detective Longoria had informed her that there may be a rape charge coming.  **Exhibit 14**, BLACKMON0000017; **Exhibit 6**, at 32:22-33:5.

19.     On February 13, 2020 at 6:27 p.m., Ms. Blackmon informed Ms. Airington via email that Alison Martin would be handling the case and asked Ms. Airington whether the bond appeal hearing had been set.  **Exhibit 15**, at BLACKMON000025-26.  In response, at 6:50 p.m., Ms. Airington emailed Ms. Blackmon and Ms. Martin and advised them that the bond appeal hearing had been set for 9:00 a.m. the following day.  *Id.* at BLACKMON000025.

20.     On February 13, 2020 at 6:59 p.m., Ms. Airington delivered via email the Chesterfield Report to Ms. Blackmon and Ms. Martin.  **Exhibit 15**; **Exhibit 6**, at 26:10-19.  In response to the email, Ms. Blackmon informed Ms. Airington that she spoke with Ms. Barr and Detective Longoria that day and Detective Longoria was going to contact Detective King.  **Exhibit 16**, BLACKMON000033.

21.     Ms. Blackmon read the Chesterfield Report on the morning of February 14, 2020. **Exhibit 6**, at 27:22-24.

22.     On February 14, 2020 at 8:14 a.m., prior to the 9:00 a.m. bond appeal hearing, Ms. Blackmon sent the Chesterfield Report to Detective Longoria via email.   **Exhibit 17**, at BLACKMON000039.

23.     During the bond appeal hearing, Plaintiff's counsel asked the court to grant Plaintiff a bond, $8,000 with surety and that he be on GPS monitoring, and that he surrender his passport. **Exhibit 18**, at 9:2-12, Transcript from bond appeal hearing held on February 14, 2020 at 9:00 a.m., before Judge Joi Taylor; **Exhibit 6**, at 38:17-39:1.

24.     Plaintiff's counsel did not move the court to dismiss the charges against Plaintiff. **Exhibit 18**, at 8:23-9:3; **Exhibit 6**, at 38:9-39:1, 45:22-46:11.

25.     In support of her request that Plaintiff be granted bond, Plaintiff's counsel proffered the Chesterfield Report to the court and summarized its contents on the record.   **Exhibit 18**, at 6:11-9:12.

26.     Ms. Blackmon agreed with Plaintiff's defense counsel's summary of the Chesterfield Report and summarized her conversation with Ms. Barr from the previous day, including the fact that Ms. Barr stated that one set of Wallace's allegations was "definitely disproven" and the other allegations "Ms. Barr . . . would not go so far as to say they were disproven, but she did say there was never anything to corroborate it." **Exhibit 18**, at 9:17-10:17.

27.     Ms. Blackmon went on to state, "So that being said, the Commonwealth, out of an abundance of caution, is opposing bond in this case." **Exhibit 18**, at 10:18-20.  Ms. Blackmon's reasons were the "very violent" nature of the allegations against Plaintiff, and she proffered the corroborating photographic evidence that Wallace had presented to Detective Longoria.  **Exhibit 18**, at 11:24-12:3.  Ms. Blackmon also introduced text messages that Wallace had told Detective Longoria that she had received from Plaintiff's ex-girlfriend.  Ms. Blackmon acknowledged that

Wallace took "several months" to report the allegations against Plaintiff and relayed the fact that Wallace had told Detective Longoria that she was scared of Plaintiff. **Exhibit 18**, at 11:16-23.

28. Ms. Blackmon closed her argument by stating, "And the only thing that I will add is that the Richmond detective indicated that he is also investigating other claims that this victim made against the defendant, but he has not gotten far enough to determine if charges are warranted or not. But he is continuing to investigate those, and that's where we are." **Exhibit 18**, at 12:20-13:2.

29. This reference to "other claims" is the rape allegation made by Wallace to Detective Longoria, that Detective Longoria was intending to investigate. **Exhibit 1**, at 33:1-18; **Exhibit 6**, at 34:8-36:16.

30. Ms. Blackmon's statement to the court, that Detective Longoria indicated that he was also investigating other claims that Wallace made against Plaintiff, but he had not gotten far enough to determine if charges are warranted or not, is a true statement. **Exhibit 6**, at 41:2-15.

31. The court granted Plaintiff "a bond, $10,000 with surety on the following conditions: That he be on the electronic monitoring of Pre-trial Services; no contact with the alleged victim; and he must surrender his passport." **Exhibit 18**, at 13:21-14:6.

32. Ms. Blackmon caused the charges against Plaintiff to be dismissed, by nolle prosequi, on February 27, 2020. **Exhibit 6**, at 40:12-15.

33. Ms. Blackmon decided to dismiss the charges against Plaintiff after she spoke with Ms. Martin regarding Wallace's credibility issues, and after Ms. Martin spoke with Detective Longoria regarding the rape investigation. **Exhibit 6**, at 40:16-41:1.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The essence of the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to the jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. After that required showing, however, the party opposing the motion must set forth specific facts, supported by evidence, showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 250.[3]

## ARGUMENT

The gravamen of Plaintiff's remaining claims (Counts I and III) against Ms. Blackmon is that she may be liable for a claim of malicious prosecution for "persisting in the continued prosecution of Dr. Khoraki" after being presented with information that tended to show the "false nature" of Wallace's claims. Second Am. Compl. ¶¶ 54-55. The Court should grant judgment in Ms. Blackmon's favor because the Supreme Court held in *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976), and its progeny, that Ms. Blackmon, a prosecutor, is immune for all actions she took

---

[3] The opposing party may not rest on the mere pleadings. *Celotex*, 477 U.S. at 324. "In determining whether summary judgment is appropriate, courts determine 'whether the evidence presents a sufficient disagreement to require submission to jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 769 (4th Cir. 2003). A mere scintilla of proof will not prevent the entry of summary judgment. *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

during the judicial phase of Plaintiff's criminal prosecution, including "continuing to prosecute" Plaintiff by not dismissing the charges against him and opposing his request for bond after receiving the information contained in the Chesterfield Report.

Even if Ms. Blackmon was not entitled to absolute immunity, Ms. Blackmon is entitled to judgment as a matter of law because there is no recognized cause of action for malicious prosecution against a prosecutor for continuing to prosecute a criminal defendant after receiving exculpatory evidence, or for making false statements in open court. A plaintiff may only sustain a malicious prosecution claim against a prosecutor that initiated or cooperated in the initiation of charges against a criminal defendant. This Court has already dismissed the malicious prosecution claims against Ms. Blackmon on this theory by its August 2, 2022 Order.

Moreover, the undisputed facts in this case demonstrate that Ms. Blackmon did not act maliciously. Plaintiff never asked Ms. Blackmon to dismiss the charges against him; he asked her to consent to substantially the same terms of bond that the court granted him; and every statement that Ms. Blackmon made in open court during the bond appeal hearing was truthful and accurate.

Finally, if this Court holds that Ms. Blackmon is not entitled to absolute prosecutorial immunity Ms. Blackmon is entitled to qualified immunity for the federal claim and good faith immunity for the Virginia state law claim.

I.   **The U.S. Supreme Court Held in *Imbler v. Pachtman* That a Prosecutor Is Absolutely Immune from Liability for "Continuing the Prosecution" of a Criminal Defendant or Making False Statements in Court.**

The United States Supreme Court held in *Imbler v. Pachtman* that state prosecuting officials enjoy absolute immunity from liability under § 1983 when they act as advocates for the State. *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976); *Savage v. Maryland*, 896 F.3d 260, 268 (4th Cir. 2018). In *Imbler*, a plaintiff, who was wrongfully convicted and sentenced to death for

first-degree felony murder and was subsequently exonerated, brought a civil rights action, under 42 U.S.C. § 1983 and related statutes, against the prosecutor (Pachtman) alleging that Pachtman had intentionally allowed a witness to give false testimony at trial, deliberately suppressed exculpatory evidence, and "prosecuted [the plaintiff] with knowledge of a lie detector test that had 'cleared' [the plaintiff]." *Id*. at 416 (emphasis added). The district court dismissed the complaint on the ground that "public prosecutors repeatedly had been held immune from civil liability for 'acts done as part of their traditional official functions' and that Pachtman's alleged acts fell into that category." *Id*. The Ninth Circuit had affirmed the district court's ruling, dismissing the plaintiff's suit. *Id*. The Supreme Court granted certiorari to address the question of "whether a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is amenable to suit under 42 U.S.C. § 1983 for alleged deprivations of the defendant's constitutional rights." *Id*. at 410 (emphasis added).

Justice Lewis F. Powell, Jr., writing for a unanimous Court, held that prosecutors are entitled to the same absolute immunity under § 1983 that they enjoy at common law from actions for malicious prosecution where the alleged conduct occurs during the judicial phase of the criminal prosecution. *Id*. at 427 ("We conclude that the considerations outlined above dictate the same absolute immunity under § 1983 that the prosecutor enjoys at common law."); *see also Lyles v. Sparks,* 79 F.3d 372, 377 (4th Cir. 1996) ("[T]he *Imbler* Court specified that absolute immunity protects prosecutors' decisions 'whether and when to prosecute.'' (emphasis added)). "The Supreme Court also held in *Imbler* that absolute immunity protected the prosecutor from allegations that he had knowingly used perjured testimony and suppressed material evidence at the plaintiff's trial." *Lyles*, 79 F.3d at 377 (citing *Imbler*, 424 U.S. at 431).

In so holding, the Court relied on deep rooted public policy objectives that countenance in favor of absolute immunity under § 1983 even where a prosecutor engages in clear misconduct during the judicial phase of a criminal prosecution. *See id*. at 424. The Court reasoned:

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. . . . Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.
> . . .
> [S]uits that survived the pleadings would pose substantial danger of liability even to the honest prosecutor. The prosecutor's possible knowledge of a witnesses' falsehoods, the materiality of evidence not revealed to the defense, the propriety of a closing argument, and ultimately in every case the likelihood that prosecutorial misconduct so infected a trial as to deny due process, are typical of issues with which judges struggle in actions for post-trial relief, sometimes to differing conclusions. The presentation of such issues in a § 1983 action often would require a virtual retrial of the criminal offense in a new forum, and the resolution of some technical issues by the law jury. . . . Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.

*Id*. at 425-26.

"The Supreme Court recognized that this immunity would leave the 'genuinely wronged' without a remedy against prosecutors acting for malicious or unlawful purposes." *Savage*, 896 F.3d at 268 (emphasis added) (quoting *Imbler*, 424 U.S. at 427); *Clay v. Yates,* 809 F. Supp. 417, 422 (E.D. Va. 1992) ("[A]bsolute immunity is not defeated even by a showing that the prosecutor acted wrongfully or maliciously."). "But the importance of shielding prosecutorial decision-

making from the influence of personal liability concerns, the Court concluded, outweighed the harm." *Id*. (citing *Carter*, 34 F.3d at 261). The Court, relying on Judge Learned Hand, reasoned:

> As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

*Imbler*, 424 U.S. at 428 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (C.A. 2 1949), *cert denied*, 339 U.S. 949 (1950)).

Since *Imbler* was decided, the Supreme Court has repeatedly affirmed its holding and circumscribed the scope of a prosecutor's absolute immunity to include activities that are "intimately associated with the judicial phase of the criminal process," applying a "functional approach." *See Imbler*, 424 U.S. at 430; *Kalina v. Fletcher*, 522 U.S. 118, 125-26 (1997); *Buckley v Fitzsimmons*, 509 U.S. 259, 273 (1993); *Burns v. Reed*, 500 U.S. 478, 489-90 (1991). Courts employing this functional approach "look to 'the nature of the function performed,' without regard to 'the identity of the actor who performed it,' 'the harm that the conduct may have caused,' or even 'the question whether it was lawful.'" *Nero v. Mosby*, 890 F.3d 106, 118 (4th Cir. 2018) (quoting *Buckley*, 509 U.S. at 269).

In applying this functional approach, the Supreme Court has distinguished between advocative functions, and investigative or administrative functions, holding that the former enjoy absolute immunity, but the latter do not. *See Kalina*, 522 U.S. at 125-26. A prosecutor acts as an advocate when she professionally evaluates evidence assembled by the police, *Buckley*, 509 U.S. at 273, decides to seek an arrest warrant, *Kalina*, 522 U.S. at 130, prepares and files charging documents, *id*., participates in a probable cause hearing, *Burns*, 500 U.S. at 492, participates in the

bail application process, *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2nd Cir. 1995),[4] and presents evidence at trial, *Imbler*, 424 U.S. at 431.

In applying this framework to the undisputed material facts in this case, there can be no debate that Ms. Blackmon was acting as an advocate for the Commonwealth when, on February 13, 2020 and February 14, 2020, she evaluated the information contained in the Chesterfield Report and decided, in her professional judgment, not to dismiss the charges against Plaintiff and to oppose Plaintiff's bond appeal. On February 14, 2020, when Ms. Blackmon appeared and articulated her position in open court, she was advocating the position of the Commonwealth, and thus enjoys absolute immunity for her actions.

Although *Imbler* squarely forecloses Plaintiff's "continued prosecution" theory of liability against Ms. Blackmon, other courts have either dismissed complaints on motions pursuant to Rule 12(b)(6) in cases in which a prosecutor "continued to prosecute" a defendant after receiving "exculpatory" evidence.[5]

---

[4] *See also Burns v. County of King*, 883 F.2d 819, 823-24 (9th Cir. 1989) (holding that individual who supplied an affidavit, based on allegedly false information, for use in a bail revocation hearing is entitled to absolute immunity); *Lerwill v. Joslin*, 712 F.2d 435, 438 (10th Cir. 1983) ("We conclude that [the prosecutor's] filing charges, procuring an arrest warrant, and seeking a particular bail amount were part of his 'initiation and presentation' of a prosecution within the meaning of *Imbler*." (emphasis added)).

[5] *Smith v. McCarthy*, 349 Fed. Appx. 851, 858-59 (4th Cir. 2009) (affirming dismissal of claims that prosecutor had "withheld exculpatory evidence and persisted in prosecution," on basis of absolute immunity); *Peay v. Ajello*, 470 F.3d 65, 68 (2d Cir. 2006) (holding claims against a prosecutor "involving the initiation and pursuit of prosecution, are foreclosed by absolute prosecutorial immunity, regardless of their alleged illegality" (emphasis added)); *Hall v. Flathead Cty. Att'y*, 478 F. Supp. 644, 645 (D. Mont. 1979) (granting 12(b)(6) motion to dismiss based on prosecutorial immunity) ("The problems of what evidence to believe, what evidence to present, what avenues of inquiry to pursue, and what cases to file, lie at the heart of the prosecutorial function, and decisions as to them are the kinds which ought not be the subject matter of second-guessing in a civil rights action.").

Finally, this Court has requested briefing on the issue of whether Ms. Blackmon may be liable for opposing Plaintiff's bond appeal "and, in so doing, made statements to the court at the bond appeal hearing . . . that are alleged to be untrue and inaccurate. . . ." (ECF No. 78 at 2.) The Fourth Circuit has squarely addressed this issue in *Lyles v. Sparks*, in holding that "[a state prosecutor] enjoys absolute immunity from claims that she made false representations and suborned perjury [during the judicial phase of the criminal process]." 79 F.3d at 377; *see also Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994) ("The Court in *Imbler* specifically held that the presentation of false testimony in court is a charge for which the prosecutor is afforded absolute immunity.") Other courts in this circuit have similarly held that a prosecutor is immune from liability for making false statements in open court. *See, e.g.*, *Westfall v. Tichnell*, No. GJH-20-271, 2021 WL 2434432, at *3-4 (D. Md. June 15, 2021) (holding prosecutor enjoys absolute immunity for claim that he "knowingly and falsely misrepresent[ed] evidence"); *Lesane v. Spencer*, No. 3:09CV012, 2009 WL 4730716, at *4 (E.D. Va. Dec. 8, 2009) (Williams, J.) (dismissing claims against an assistant U.S. attorney who was alleged to have "falsely represented" facts during oral argument on a motion to dismiss).

In sum, the doctrine of absolute immunity shields Ms. Blackmon from liability for Plaintiff's federal law claim of malicious prosecution, brought pursuant to § 1983, for her decision not to dismiss the charges against Plaintiff after receiving the Chesterfield Report, and for her decision to oppose Plaintiff's bond appeal. Moreover, even if Plaintiff had pled that Ms. Blackmon made false statements to the court during the bond appeal hearing (which he has not), Ms. Blackmon would enjoy absolute immunity for any cause of action predicated on such allegations.

## II.    Ms. Blackmon Enjoys Absolute Immunity from Civil Liability for Plaintiff's State Law Malicious Prosecution Claim (Count III).

Ms. Blackmon is also absolutely immune from liability for Plaintiff's malicious prosecution claim under Virginia law.  Virginia law recognizes that prosecutors are entitled to absolute immunity from suit for actions intimately connected with the prosecutor's role in judicial proceedings.  *Andrews v. Ring*, 266 Va. 311, 321, 585 S.E.2d 780, 785 (2003); *see Krumtum v. Crawford*, No. 1:16CV00007, 2016 WL 4468275, at *5 (W.D. Va. Aug. 24, 2016), *judgment entered*, 2016 WL 4468917 (W.D. Va. Aug. 24, 2016) ("Virginia law mandates that prosecutorial immunity is as strong, if not stronger, than it is under federal law."); *see also Vuyyuru v. Jadhav*, No. 3:10BCVB173, 2011 WL 1483725 at *10 n.9 (E.D. Va. Apr. 19, 2011) (recognizing that "prosecutorial immunity covers a broader range of conduct under Virginia law than it does under federal law").

"The absolute immunity of prosecutors from civil liability for acts within the scope of their duties and intimately associated with the judicial phase of the criminal process is derivative of judicial immunity." *Andrews*, 266 Va. at 320, 585 S.E.2d at 784.  The Supreme Court of Virginia has held, "[i]t is clear that judges enjoy absolute immunity from civil liability, even when they act maliciously or corruptly or in excess of their jurisdiction. Judges can be held liable only when they act in 'clear absence of all jurisdiction." *Id.* (quoting *Harlow v. Clatterbuck*, 230 Va. 490, 493, 339 S.E.2d 181, 184 (1986)). "The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties." *Id.* (quoting *Imbler*, 424 U.S. at 422-23)).

*Andrews v. Ring* is the leading case on the doctrine of absolute immunity in Virginia.  In *Andrews v. Ring*, the Supreme Court of Virginia affirmed the trial court's grant of summary judgment in favor of a Commonwealth's Attorney and dismissal of the claim for malicious

prosecution on the grounds that the Commonwealth's Attorney was entitled to absolute immunity for allegedly directing a police officer to appear before a magistrate and file a criminal complaint against the plaintiff. 266 Va. at 317, 585 S.E.2d at 783. In its opinion, the Supreme Court of Virginia articulated an expansive scope of the absolute immunity afforded to prosecutors in connection with charging decisions in Virginia:

> When a prosecutor is involved in the initiation of the criminal process, it may take the form of preparation of an indictment for consideration by a Grand Jury, direction to a law enforcement officer that sufficient probable cause exists for the obtaining of a warrant or a summons. For the purposes of determining a prosecutor's absolute immunity from suit, these are distinctions without a difference. In each case where a prosecutor is involved in the charging process, under Virginia law, that action is intimately connected with the prosecutor's role in judicial proceedings and the prosecutor is entitled to absolute immunity from suit for such actions. Consequently, [defendant] is entitled to absolute immunity from suit on the counts in each motion for judgment alleging malicious prosecution.

*Id.* at 321, 585 S.E.2d at 785 (emphasis added). As evident by the Supreme Court of Virginia's decision in *Andrews*, Ms. Blackmon's decision not to dismiss the charges against Plaintiff on February 13 or February 14, 2020, and to oppose Plaintiff's appeal of bond at the bond appeal hearing was an action "intimately connected with the prosecutor's role in judicial proceedings" for which she is entitled to absolute immunity from suit alleging malicious prosecution. *Id.*; *see also Savage v. County of Stafford, Virginia*, 1:09–cv–1328, 2010 WL 2520532, at *2 (E.D. Va. June 16, 2010) (applying Virginia law).

Counsel for Ms. Blackmon has found no Virginia case which supports a theory of recovery against her under a "continuing prosecution" theory.[6] Ms. Blackmon is entitled to absolute

---

[6] Ms. Blackmon anticipates that Plaintiff will, again, rely upon the Restatement (Second) of Torts § 655 (1977) in support of his "continued prosecution" theory against Ms. Blackmon. (ECF No. 69 at 9-10). The Restatement (Second) of Torts, however, states that, "A private person who takes an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings." Restatement (Second) of Torts § 655 (1977) (emphasis

prosecutorial immunity from suit for Plaintiff's malicious prosecution claim under Virginia law. The Court should grant judgment in Ms. Blackmon's favor on Plaintiff's state law claim (Count III).

### III. There Is No Cause of Action Recognized by a Federal or Virginia Court for Malicious Prosecution Against a Prosecutor for Opposing a Criminal Defendant's Bond Appeal, "Refusing" To Dismiss the Charges Against Plaintiff, or Making Alleged "False Statements" in Open Court.

In the event that the Court finds that Ms. Blackmon is not entitled to absolute immunity under federal or state law, the Court should grant summary judgment in Ms. Blackmon's favor because Plaintiff's allegations, that Ms. Blackmon "refused" to dismiss the charges against Plaintiff after receiving the Chesterfield Report, and opposed his bond appeal (and allegedly made "false statements" during the hearing) cannot form the basis for a claim for malicious prosecution as a matter of law.[7]

"A 'malicious prosecution claim, under § 1983, is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.'" *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (quoting *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000)). "To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Id.* (citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)). Relatedly, in an action for malicious prosecution under Virginia

---

added). The Restatement principle, therefore, has no relevance to Plaintiff's claim against Ms. Blackmon, a <u>public</u> prosecutor, and not a "private person," for her role in the judicial phase of the prosecution.

[7] As stated above, Plaintiff has not pled facts that Ms. Blackmon made a false statement in open court during the February 14, 2020 bond appeal hearing. *See generally* Second Am. Compl. However, even if Plaintiff had, the fact that Ms. Blackmon made a false statement in court—after charges against Plaintiff were initiated—cannot support a claim for malicious prosecution under state or federal law.

law, the plaintiff must demonstrate that a prosecution was (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff. *Lewis v. Kei,* 281 Va. 715, 722, 708 S.E.2d 884 (2011).

In this case, the undisputed material facts in this case demonstrate that Plaintiff cannot sustain a claim for malicious prosecution against Ms. Blackmon because (1) she did not "cause" the seizure of Plaintiff (or institute the prosecution of Plaintiff), and (2) the "seizure" of Plaintiff (*i.e.*, his arrest) (as well as the underlying charges) was supported by probable cause.

First, it is undisputed that Ms. Blackmon did not "cause" the seizure of Plaintiff or initiate the charges (or cooperate in the initiation of charges) against Plaintiff. The Court has already dismissed Plaintiff's malicious prosecution claims against Ms. Blackmon, insofar as Ms. Blackmon is alleged to have played a role in initiating charges against Plaintiff. (ECF No. 78, at 2.) Therefore, there is no evidence in this case that Ms. Blackmon "caused" Plaintiff's arrest. *See* **Exhibit 1**, at 30:10-14; **Exhibit 4**.[8]

Next, the Second Amended Complaint lacks any allegation—nor could there be any claim—that Ms. Blackmon caused the detention of Plaintiff after his arrest. The General District Court for the City of Richmond denied Plaintiff bond.[9] **Exhibit 6**, at 13:11-23. Notwithstanding the position that Ms. Blackmon took in opposing Plaintiff's bond appeal on February 14, 2020, Plaintiff received substantially the same bond terms and relief that he sought. **Exhibit 18**, at 9:2-

---

[8] Plaintiff had been arrested, charged, and placed in jail before Ms. Blackmon even knew that Plaintiff existed. *See* **Exhibit 6**, 10:22-11:3.

[9] Plaintiff does not assert a claim against Ms. Blackmon with respect to the general district court's denial of bond. *See generally* Second Am. Compl.

12; **Exhibit 6**, at 38:17-39:1.[10]   Therefore, Ms. Blackmon was not a "cause" of any seizure or continued seizure of Plaintiff.

Second, the "seizure" of Plaintiff (*i.e.*, his initial arrest following the initiation of charges by Detective Longoria) was supported by probable cause.   Under Virginia and federal law, in the context of a malicious prosecution action, probable cause is defined as "knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected."   *Andrews*, 266 Va. 311, 585 S.E.2d at 786; *see also Wolfe v. City of N. Charleston*, No. 21-7335, 2022 WL 2752362, at *3 (4th Cir. July 14, 2022).   "The determination whether a defendant had probable cause to believe that a crime was committed is judged with reference to the time the defendant took the action <u>initiating the criminal charges</u>." *Stanley v. Webber*, 260 Va. 90, 96, 531 S.E.2d 311, 314 (2000) (emphasis added); *see also Bennett*, 744 F. Supp. 2d at 514; *Lewis*, 281 Va. at 723, 708 S.E.2d at 890.   "Police may rely on the statement of a reported eyewitness as establishing probable cause to seek an arrest." *Lewis*, 281 Va. at 724, 708 S.E.2d at 890; *Reilly*, 273 Va. at 732-34, 643 S.E.2d at 218-19 (finding probable cause existed when the arresting officer obtained a warrant based on the positive identification of a suspect by an eyewitness).   Detective Longoria relied upon the report by Wallace, a complaining witness prior to initiating charges against Plaintiff.   Accordingly,

---

[10] To this end, Plaintiff cannot claim a form of "damage" for a prolonged detention after he was granted bond by the Richmond City Circuit Court.  Counsel for Plaintiff has previously represented to the Court that Plaintiff was detained an additional three days after he was granted bond so that Pre-Trial Services could prepare his GPS monitoring.  However, Ms. Blackmon is not the proximate cause for that delay.  As stated above, counsel of Plaintiff requested that Plaintiff be released with GPS monitoring.  *See* Exhibit 18, at 9:4-12 ("<u>Doctor Khoraki wants to be monitored</u> . . . we are asking the Court to essentially mirror the bond determination that was made by Judge McClenney, that is an eight thousand dollar secured bond, <u>GPS monitor</u>, and pre-trial and to surrender his passport." (emphasis added)).

Detective Longoria had probable cause to initiate the charges against Plaintiff on or about January 31, 2020.

Counsel for Defendant has been unable to find a single case (under federal or Virginia law) in which a prosecutor has been held liable under the theory advanced by Plaintiff—that the prosecutor "refused" to dismiss a charge against a criminal defendant, opposed that criminal defendant's bond, or made a false statement in open court. *See Imbler*, 424 U.S. at 430; *Lyles*, 79 F.3d at 377; *Andrews v. Ring*, 266 Va. 311, 585 S.E.2d 780 (2003). Put simply, the remaining allegations against Ms. Blackmon—that she "refused" to dismiss the charges against Plaintiff after receiving the Chesterfield Report, opposed Plaintiff's bond appeal, or made any "false" statement in open court—cannot support a cause of action against Ms. Blackmon as a matter of law.

## IV. The Undisputed Material Facts Demonstrate that Ms. Blackmon Did Not Act Maliciously, Because Plaintiff Never Asked Ms. Blackmon to Dismiss the Charges Against Him and Ms. Blackmon Did Not Make an Untruthful Statement to the Court.

Finally, there is no evidence that Ms. Blackmon acted with malice Even if Plaintiff had plausibly pled facts to support a cause of action against Ms. Blackmon in the Second Amended Complaint, the undisputed facts in this case demonstrate that neither Plaintiff nor his counsel moved the Court, or asked Ms. Blackmon, to dismiss the charges against him—therefore, Ms. Blackmon could not have plausibly "refused" to dismiss any charges against him, and Ms. Blackmon did not make any untruthful statement during the February 14, 2020 bond appeal hearing.

First, the basis of the remaining claim against Ms. Blackmon, as framed by the Court in its August 2, 2022 Order, is that Ms. Blackmon "refused" to dismiss the charges against Plaintiff after receiving the Chesterfield Report. However, it is undisputed that neither Plaintiff nor his defense counsel ever moved the Court or asked Ms. Blackmon (formally or informally) to dismiss the

charges against him. Indeed, counsel for Plaintiff stated during the bond appeal hearing that "where [she] see[s] this going is a dismissal, but that's a conversation for another day." Second Am. Compl. at Ex. C (**Exhibit 18** hereto), at 8:23-9:3 (emphasis added). Ms. Blackmon testified unequivocally during her deposition in this matter:

> Q. Did counsel for Dr. Khoraki . . . at the bond hearing did she ask that the case be dismissed?
> A. No.
> Q. Did she file a motion at that time that the case be dismissed?
> A. No.
> Q. In any manner did she move the Court on February the 14th, after providing you with the letter from Detective King, that the case be dismissed?
> A. No. . . .

**Exhibit 6** at 38:14-21. Put a different way, there was no request to dismiss the charges for Ms. Blackmon to "refuse." Therefore, Ms. Blackmon could not be held liable under any legal theory for "refusing" to dismiss the charges against Plaintiff.

Second, although not specifically pled in the Second Amended Complaint, the Court ordered limited discovery in this case on the issue of whether Ms. Blackmon "made statements to the court at the bond appeal hearing . . . that are alleged to be untrue and inaccurate respecting whether Detective Longoria was investigating more charges made by [Wallace] against Plaintiff." (ECF No. 78, at 2.) There is not a scintilla of evidence that Plaintiff can proffer for the proposition that Ms. Blackmon's statements to the Court were untrue or inaccurate.

With respect to the statement that Detective Longoria was continuing to investigate other claims that Wallace made against Plaintiff,[11] Ms. Blackmon and Detective Longoria have testified unequivocally that, on February 13, 2020, Detective Longoria informed Ms. Blackmon on the

---

[11] "[T]he Richmond detective indicated that he is also investigating other claims that this victim made against the defendant, but he has not gotten far enough to determine if charges are warranted or not. But he is continuing to investigate those, and that's where we are." Second Am. Compl. at Ex. C (**Exhibit 18** hereto), at 12:20-13:2.

telephone that he was continuing to investigate a rape allegation made by Wallace against Plaintiff. **Exhibit 1**, at 33:10-18; **Exhibit 6**, at 35:18-36:19 **Exhibit 7**, at 4-5; **Exhibit 10**. This is consistent with Ms. Blackmon's contemporaneously written notes. **Exhibit 10**. However, due to the sensitive nature of a rape allegation, Detective Longoria had planned to arrange for a follow-up meeting with Wallace, as well as Assistant Commonwealth Attorney Martin and a victim witness representative, to further investigate that claim. **Exhibit 1**, at 25:12-26:2. Therefore, Ms. Blackmon's statement to the Court that "the Richmond detective [Detective Longoria] was investigating other claims that [Wallace] made against [Plaintiff], but he ha[d] not gotten far enough to determine if charges are warranted or not" is a true statement.

Accordingly, for the myriad reasons set forth herein, Ms. Blackmon is entitled to summary judgment on Count I.

## V. Alternatively, Ms. Blackmon Is Entitled to Qualified Immunity for Plaintiff's Federal Law Malicious Prosecution Claim, Brought Pursuant to § 1983.

Alternatively, if this Court holds that Ms. Blackmon is not entitled to absolute prosecutorial immunity for continuing the prosecution of Plaintiff after receipt of the Chesterfield Report and that evidence in this case supports a claim for malicious prosecution, under § 1983, against Ms. Blackmon, Ms. Blackmon is entitled to qualified immunity.

"Qualified immunity 'represents the norm' for executive officers, *Malley v. Briggs*, 475 U.S. at 340, quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982), so when a prosecutor 'functions as an administrator rather than as an officer of the court' he is entitled only to qualified immunity." *Buckley,* 509 U.S. at 273 (quoting *Imbler*, 424 U.S. at 431 n.33). "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

*Springmen,* 122 F.3d at 214 (quoting *Harlow,* 457 U.S. at 818). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

In this case, the undisputed facts demonstrate that Ms. Blackmon was notified by Plaintiff's defense counsel, on the evening of February 12, 2020, that she had reason to believe that the charges against Plaintiff were "fabricated" because Wallace had previously made false allegations against a different man in Chesterfield. **Exhibit 8**, BLACKMON000001-2; *see also* **Exhibit 6**, at 15:15-21. Plaintiff's counsel delivered the Chesterfield Report, memorializing the details of this information, to Ms. Blackmon later the next evening, on February 13, 2020 at approximately 7:00 p.m. (approximately 14 hours before the bond appeal hearing). **Exhibit 15**; **Exhibit 6**, at 26:10-19. The information contained in the Chesterfield Report attacked Wallace's credibility, <u>it did not exonerate Plaintiff from the charges pending in Richmond</u>. **Exhibit 6**, at 25:15-26:6. Ms. Blackmon explained during her deposition why the contents of the Chesterfield Report did not impact her bond appeal recommendation on February 14, 2020. **Exhibit 6**, at 25:15-26:6.[12]

Accordingly, on February 13 and February 14, 2020, Ms. Blackmon evaluated the Chesterfield Report for what it was—evidence challenging the credibility of the complaining witness, Wallace. Ms. Blackmon conceded to the court during the bond appeal that the Chesterfield Report demonstrated that Wallace had a history of uncorroborated reports to law enforcement. **Exhibit 18**, at 9:23-10:17. She made truthful and accurate representations to the court regarding the information known to both parties on February 14, 2020. Ms. Blackmon made

---

[12] "I don't believe that it was exculpatory because <u>it does not prove that he didn't</u>—that Dr. <u>Khoraki did not do what was alleged.</u> I do believe that it impacted her [Wallace's] credibility, and in the event that this proceeded to a preliminary hearing or onto a trial, it would certainly be used to impeach her if she testified. So, it, at that point, impacted her credibility to me, it did not mean that he didn't do it." (emphasis added).

the decision to oppose Plaintiff's bond appeal "out of an abundance of caution" for each of the reasons she articulated on the record, including the violent nature of the allegations and the existence of corroborating photographic evidence. **Exhibit 18** at 10:18-20, 11:24-12:12. Such actions cannot be plausibly said to have "transgress[ed] bright lines." As stated above, Plaintiff cannot point to any clearly established right that Ms. Blackmon could have plausibly violated. At the very least, Ms. Blackmon is entitled to qualified immunity on Count I as a matter of law.

## VI. Alternatively, Ms. Blackmon Is Entitled to Good Faith Immunity for Plaintiff's State Law Malicious Prosecution Claim (Count III).

Alternatively, if this Court holds that Ms. Blackmon is not entitled to absolute prosecutorial immunity for Plaintiff's state law malicious prosecution claim, Ms. Blackmon is entitled to good faith immunity under Virginia law. "Virginia law provides a defense to officers who subjectively 'believed[] in good faith, that [their] conduct was lawful' and whose subjective beliefs were objectively reasonable." *Wingate v. Fulford*, 987 F.3d 299, 312 (4th Cir. 2021) (quoting *DeChene v. Smallwood*, 226 Va. 475, 311 S.E.2d 749, 751 (1984)). As the Fourth Circuit recently recognized, "[a]lthough there is limited guidance on the scope of this defense, *DeChene*'s reliance on *Bivens* suggests that Virginia's good faith exception is congruent with the federal qualified immunity defense." *Id.* (citing *DeChene*, 226 Va. at 475, 311 S.E.2d at 751). As set forth above, "because [Ms. Blackmon is] entitled to qualified immunity on [Plaintiff's malicious prosecution claim] under federal law, [she is] also entitled to the good faith defense to [Plaintiff's malicious prosecution claim] under Virginia law." *Id.*

## CONCLUSION

For the foregoing reasons, the Court should grant judgment in Ms. Blackmon's favor on Counts I and III, dismiss both claims against her with prejudice, and award her prevailing party reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

JAIME BLACKMON

By Counsel

_/s/_____
William W. Tunner, Esq. (VSB No. 38358)
Rachel W. Adams, Esq. (VSB No. 92605)
*Thompson*McMullan, P.C.
100 Shockoe Slip
Richmond, VA 23219
Phone: (804) 698-7545
Fax: (804) 780-1813
wtunner@t-mlaw.com
radams@t-mlaw.com
*Counsel for Defendant Jaime Blackmon*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of September, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Thomas L. Johnson, Jr. (VSB No. 38814)
Christopher L. Anderson (VSB No. 35173)
Bricker Anderson & Johnson, PC
411 East Franklin Street, Suite 504
Richmond, VA 23219
Phone: (804) 649-2304
Fax: (804) 649-3380
johnson@bajinjurylaw.com
anderson@bajinjurylaw.com
*Counsel to Plaintiff*

Mark C. Nanavati, Esq. (VSB No. 38709)
G. Christopher Jones, Esq. (VSB No. 82260)
Benjamin F. Dill, Esq. (VSB No. 93000)
Sinnott, Nuckols & Logan, P.C.
13811 Village Mill Drive
Midlothian, VA 23114
Phone: (804) 893-3866
Fax: (804) 378-2610
mnanavati@snllaw.com
cjones@snllaw.com
bdill@snllaw.com
*Counsel for Defendant Derrick Longoria*

Miriam Airington-Fisher (VSB No. 78260)
Jennifer Quezada (VSB No. 93716)
Bianca White (VSB No. 93997)
Airington Law, PLLC
The Colonnade Building
4050 Innslake Drive, Suite 190
Glen Allen, VA 20360
Phone: (804) 774-7117
Fax: (804) 597-5424
mairington@airingtonlaw.com
jquezada@airingtonlaw.com
bwhite@airingtonlaw.com
*Counsel to Plaintiff*

A. Russell Watson
Gordon, Dodson, Gordon & Rowlett
10303 Memory Lane, Suite 101
Chesterfield, VA 23832
Phone: (804) 748-8153
Fax: (804) 748-3287
rwatson@gordondodson.com
*Counsel for Josephine Wallace*

William W. Tunner, Esq. (VSB No. 38358)
Rachel W. Adams, Esq. (VSB No. 92605)
*Thompson*McMullan, P.C.
100 Shockoe Slip
Richmond, VA 23219
Phone: (804) 698-7545
Fax: (804) 780-1813
wtunner@t-mlaw.com
radams@t-mlaw.com
*Counsel for Defendant Jaime Blackmon*