```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF VIRGINIA
                    Richmond Division
```

JAD KHORAKI,

    Plaintiff,

v.                                          Civil Action No. 3:22-cv-70

DERRICK LONGORIA,
JAIME BLACKMON, and
JOSEPHINE WALLACE,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANT JAIME BLACKMON'S MOTION FOR SUMMARY JUDGMENT ("the Motion") (ECF No. 81). For the reasons set forth below, the Motion will be granted.

**BACKGROUND**

In this action, the Plaintiff, Dr. Jad Khoraki ("Khoraki"), seeks damages for his allegedly unlawful arrest and continued prosecution based on false allegations made by a former girlfriend. The facts as relevant to Jaime Blackmon ("Blackmon") are set forth below as they are presented in the Second Amended Complaint ("SAC") and evidence supporting the Motion:

**I. Factual Background**

From March 2019 to December 2019, Khoraki was in a "casual relationship" with Josephine Wallace ("Wallace"). SAC ¶ 12. On January 20, 2020, Wallace made a series of false reports to the

Richmond Police Department, alleging that Khoraki had assaulted her. Id. ¶ 14. On January 21, 2020, a magistrate issued a warrant for Khoraki's arrest. Id. ¶ 14. Wallace also secured from a magistrate an arrest warrant on January 25, 2020, on the strength of Wallace's allegation that Khoraki had stalked her between January 23 and 25, 2020. Id. ¶ 15. On January 26, 2020, Khoraki was arrested on the outstanding warrants but was released on bond shortly after. Id. ¶ 17-18.

Thereafter, on January 29, 2020, Wallace met with Detective Derrick Longoria ("Longoria")—the lead detective assigned to the case.[1] In that meeting, Wallace alleged more serious allegations. In particular, she claimed that, on September 15, 2019, Khoraki "assaulted her, strangled her, and threatened her with a firearm," SAC ¶ 20, and she gave Longoria what she represented to be photographs of her injuries that included time stamps. ECF No. 82-3. Wallace also provided Longoria with the record of a text communication from Khoraki's previous girlfriend warning Wallace about his character and duplicity. ECF No. 82-12. Nothing in the text bespoke violent conduct. As a result of this interview, the photograph, and text communication, Longoria obtained, on January 31, 2020, a felony warrant for strangulation and misdemeanor warrants for assault and battery. CAC ¶ 23. Khoraki was

---

[1] Longoria was assigned as the case investigator on January 21, 2020. SAC ¶ 16.

2

subsequently arrested on those warrants on February 6, 2020, and this time, he was held without bond for a total of eleven days. Id. ¶¶ 24-25.

Blackmon, a deputy Commonwealth's Attorney for the City of Richmond, Virginia, was first assigned to the case on February 7, 2020, when she handled Khoraki's arraignment on behalf of the Commonwealth. ECF No. 82-6 at 13:11-20. On that date, Blackmon received Longoria's police report, the arrest warrants, Khoraki's criminal history, and a Virginia Pretrial Risk Assessment Instrument to aid her during the hearing. Id. at 11:21-12:8. Blackmon next appeared on behalf of the Commonwealth on February 10, 2020, at Khoraki's initial bond hearing, after which the court denied his request for bond. Id. at 13:21-23; SAC ¶ 24.

On February 12, 2020, counsel for Khoraki emailed Blackmon and others informing them that she would be appealing the bond denial and that she had uncovered previous false police reports made by Wallace to Chesterfield County authorities that contained almost identical accusations to those that Wallace had made against Khoraki (the basis for the arrest and detention). ECF No. 82-8 at 3. At least one of those accusations had been debunked by the Chesterfield police. Id. Counsel for Khoraki also supplied the contact information for the Chesterfield County attorney who had handled the case involving Wallace's other fabricated charges. Id. So, on the morning of February 13, 2020, Blackmon reached out to

3

the Chesterfield County Attorney to set up a time to further discuss the previous case initiated by Wallace. Id. at 1. That same morning, Blackmon also forwarded to Longoria Khoraki's counsel's email to get Longoria's "thoughts" about the information. ECF No. 82-10 at 1. As Blackmon explained in her reply email to Khoraki's counsel, the purpose of her discussions with the Chesterfield County attorney and Longoria was to better understand the new evidence presented in order to reassess her position as to bond, which at that moment she planned to oppose based on the police report and the alleged lack of an alibi for Khoraki. ECF No. 82-9 at 1.

Later in the morning of February 13, 2020, Blackmon spoke to Longoria for the first time about the case against Khoraki. ECF No. 82-6 at 13:24-14:1. As reflected in Blackmon's handwritten notes taken during the telephone call with Longoria, Blackmon and Longoria discussed his interview with Wallace, the evidence that he had gathered to that point, and the investigative steps he was taking to learn more about the new report and a rape accusation that Wallace had made against Khoraki. ECF No. 82-10 at 2. Longoria also sent Blackmon via email the pictures and text message thread he had previously received from Wallace. ECF Nos. 82-11 and 82-12. That same morning, Blackmon also spoke with the Chesterfield County attorney about Wallace's previous accusations against

4

another man, one of which the police had disproved. ECF No. 82-13.

Because the case against Khoraki now included possible rape charges, it was reassigned to Alison Martin, the Assistant Commonwealth Attorney in Richmond who supervised sexual assault cases. ECF No. 82-6 at 32:22-33:5; ECF No. 82-14. Blackmon passed along that information to Khoraki's counsel the same day but informed his counsel that she (Blackmon) would be handling the bond appeal hearing scheduled for the next morning. ECF No. 82-15 at 1-2.

In response, Khoraki's counsel sent Blackmon a detailed report by the Chesterland County detective who had investigated Wallace's previous false accusations against the other man, including the investigative steps that the police had taken to disprove her claims. Id. at 5-8. Blackmon read that report the morning of the bond appeal hearing and sent it to Longoria for him to read as well. ECF No. 82-6 at 27:12-24; ECF No. 82-17 at 2.

During the bond appeal hearing on February 14, 2020, counsel requested that Khoraki be released on an $8,000 secured bond, GPS monitoring, and the surrender of his passport. ECF No. 82-18 at 9:10-12. In support, Khoraki's counsel presented letters from friends and family and the Chesterfield County report about the previous charges that had been debunked. Id. at 5:11-9:3. In response, Blackmon detailed the steps that she had taken to better

5

understand the particulars of the previous investigation and the effect that it actually had on her understanding of the current charges. Id. at 9:16-10:17. Blackmon expressed that, "out of an abundance of caution," she had decided to oppose bond because of the nature of the allegations, the corroborating evidence, and the possibility of additional charges that Longoria was still investigating and of which she had learned the previous day. Id. at 10:18-13:2. Nevertheless, the court granted Khoraki bond in the amount of $10,000 and ordered his release with electronic monitoring and the surrender of his passport. Id. at 13:22-14:6. After a slight administrative delay to prepare the electronic monitoring system, Khoraki was released on February 17, 2020. SAC ¶ 25.

Following the bond appeal hearing, Blackmon spent the next two weeks making "a final decision of whether or not to proceed" with the prosecution. ECF No. 82-6 at 43:16-23. To do this, Blackmon discussed the case further with Martin to dissect Wallace's credibility issues and be completely "sure that [Wallace] wasn't telling the truth" and thereby assure that Wallace's safety was not at risk. Id. at 44:5-18. At the next hearing on February 27, 2020, Blackmon asked the court to nolle prosequi all the charges. Id. at 40:12-15. All charges against Khoraki were dismissed by March 10, 2020. SAC ¶ 39. Khoraki contends that this entire experience "caus[ed] irreparable harm to

6

his personal and professional life," including extreme emotional distress, unwarranted legal fees, and damage to his reputation. Id. ¶ 40.

## II. Procedural History

To recover for his alleged mental and societal injuries, Khoraki filed this action on February 2, 2022, asserting two counts against Blackmon.[2] Khoraki filed the SAC (ECF No. 60) on June 3, 2022. COUNT I presents a claim for Malicious Prosecution under 18 U.S.C. § 1983. SAC ¶¶ 42-58. COUNT III presents a claim for Malicious Prosecution under Virginia law. Id. ¶¶ 65-75. Khoraki is seeking actual damages of at least $5 million, punitive damages in the amount of $1 million, attorneys' fees, costs, and interest. Id. at 15-16.

Blackmon filed a MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF No. 64) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim as well as an Answer (ECF No. 66). On August 2, 2022, the Court issued an ORDER (ECF No. 78) granting Blackmon's Motion to Dismiss to the extent that, in COUNT I (Malicious Prosecution under 42 U.S.C. § 1983) and COUNT III (State Law Claim Malicious Prosecution), Blackmon was alleged to be liable for consulting with Longoria in securing the January 31, 2020, arrest

---

[2] Khoraki also brought additional claims against the other two defendants. However, because those claims are not relevant to the Motion (ECF No. 81), they are not discussed in this Memorandum Opinion.

7

warrant or in procuring the subsequent arrest on February 6, 2020. ECF No. 78 at 2. As for the remaining aspects of COUNTS I and III, the Court ordered discovery on the limited issue of whether Blackmon was entitled to absolute or qualified immunity for refusing to dismiss the charges against Khoraki presented in the January 31, 2020 arrest warrant and for opposing Khoraki's bond in the February 14, 2020 bond appeal hearing, including making statements in the bond hearing that are alleged to be untrue and inaccurate respecting whether Longoria was investigating more charges.[3] ECF No. 78 at 2. Following discovery, Blackmon filed the Motion which is ripe for decision.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment under Fed. R. Civ. P. 56 when the movant can show "that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 requires the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[3] The Court also ordered discovery on a limited set of issues pertaining to Longoria and whether there was probable cause in obtaining the warrant, neither of which is relevant to the Motion. ECF No. 78 at 3-4.

8

Additionally, "damages suits concerning constitutional [and certain statutory] violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity." Butz v. Economou, 438 U.S. 478, 508 (1978).

**DISCUSSION**

Blackmon presents four reasons why she is entitled to summary judgment: (1) she is protected by absolute immunity for both the federal and state law claims; (2) Khoraki failed to state a claim for malicious prosecution as a matter of law; (3) there is undisputed evidence that Blackmon acted with good faith rather than malice; and (4) Blackmon is at the very least protected by qualified immunity. ECF No. 82 at 2-3. Because the Court finds, as a matter of law, that Blackmon is protected from suit on both remaining claims by absolute immunity, there is no need to consider the merits of the other three arguments. See O'Neal v. Brennan, No. 1:14-cv-1770, 2015 WL 11109492, at *2 (E.D. Va. May 27, 2015) ("Because these arguments are so dispositive, the Court need not consider the defendant's other arguments.").

**I. Doctrine of Absolute Immunity**

   ***a. Federal Absolute Immunity***

The Supreme Court of the United States has held (and neither party disputes) that "a prosecutor enjoys absolute immunity from § 1983 suits for damages when [she] acts within the scope of [her]

9

prosecutorial duties" to include "initiating a prosecution and in presenting the State's case." Imbler v. Pachtman, 424 U.S. 409, 420, 431 (1976). This immunity exists to shield prosecutors from liability that otherwise would constrain their decision-making abilities, divert their attention and energy from their jobs, and hamstring "the vigorous and fearless performance of the prosecutor's duty." Id. at 424-28. Following Imbler, the Supreme Court has extended absolute immunity to prosecutors when their conduct is "intimately associated with the judicial phase of the criminal process." Id. at 430; see also Burns v. Reed, 500 U.S. 478, 492 (1991) (holding that a prosecutor's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing are protected by absolute immunity"). However, in Buckley v. Fitzsimmons, the Supreme Court also made clear that absolute immunity does not protect the prosecutor when conducting investigations similar to a detective and when making comments to the media. 509 U.S. 259, 273-74, 277 (1993).

To determine whether absolute immunity is available to Blackmon, it is necessary to apply a functional approach that looks at the conduct in which Blackmon was engaging, because immunity is not predicated only on her status as a prosecutor. Forrester v. White, 484 U.S. 219, 229 (1988) (applying absolute immunity to prosecutors based on "the nature of the function performed, not

10

the identity of who performed it"); Lyles v. Sparks, 79 F.3d 372, 377 (4th Cir. 1996). Thus, Blackmon is entitled to absolute immunity if the Court determines that she was functioning in an advocative role rather than an investigative or administrative role. Kalina v. Fletcher, 522 U.S. 118, 125-26 (1997); Savage v. Maryland, 896 F.3d 260, 268 (4th Cir. 2018).

### b. Absolute Prosecutorial Immunity Under Virginia Law

The Commonwealth of Virginia recognizes a similar prosecutorial protection through its common law and for many of the same justifications as the federal protection. See Andrews v. Ring, 858 S.E.2d 780, 785 (Va. 2003) ("The determination whether absolute prosecutorial immunity is extended to the prosecutor in this case [brought under Virginia law] is a matter of state common law not federal law."). While similar to absolute immunity under federal law, Virginia common law offers a broader prosecutorial immunity in certain circumstances. Daniczek v. Spencer, 156 F. Supp. 3d 739, 762 (E.D. Va. 2016). But as is the case in assessing absolute immunity under federal law, the basic protection under Virginia common law is extended to prosecutors when their actions are "intimately connected with [their] role in judicial proceedings." Andrews, 858 S.E.2d at 785.

## II. Absolute Immunity as Applied to Blackmon

The SAC presents two claims against Blackmon for malicious prosecution under § 1983 and state law. SAC ¶¶ 42-58, 65-75. As a

11

result of the previous Memorandum Order (ECF No. 78), COUNTS I and III now depend solely on the contentions that Blackmon, acting recklessly and with malice, refused to dismiss the charges based on the January 31, 2020, arrest warrant and opposed granting Khoraki's request for bond during the bond appeal hearing and, in doing so, made allegedly false and inaccurate statements respecting a continuing investigation into additional charges against Khoraki. SAC ¶¶ 55, 72; ECF No. 78 at 2. For the reasons set forth below, the record shows that, in failing to dismiss the January 31, 2020 charges and in opposing the grant of bond during the bond appeal hearing, Blackmon was acting as an advocate for the state rather than in an investigative role as Khoraki contends. See ECF No. 85 at 3. Accordingly, because Blackmon was functioning in an advocative role, she is entitled to absolute immunity for both claims.

### A. *Malicious Prosecution under 42 U.S.C. § 1983 (COUNT I)*

A "malicious prosecution" claim brought under 42 U.S.C. § 1983 is "simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). Here, as to Blackmon, Khoraki alleges that he was unconstitutionally kept in the state's custody when Blackmon refused to dismiss the charges and opposed his request for bond.

12

In refusing to dismiss the charges, Blackmon was required to sort through the information pertaining to the case, assess the strength and credibility of the evidence, and make a decision on how best to advocate for the Commonwealth. See ECF No. 82-6 at 11:9-17:21, 22:17-25:20. In Buckley v. Fitzsimmons, the Supreme Court held that "the professional evaluation of the evidence assembled by police and appropriate preparation for its preparation at trial or before a grand jury" are actions that are protected by absolute immunity because they are conducted as a part of the prosecutor's "role as an advocate for the State." 509 U.S. 259, 273 (1993). Buckley clearly applies to the facts presented here because, in engaging in the conduct of which Khoraki complains, Blackmon was evaluating evidence gathered by other individuals and deciding how it would affect the litigation decisions, which included the decision to dismiss the charges altogether.

Likewise, Blackmon engaged in the same type of conduct ahead of the bond hearing to determine what her position would be on behalf of the Commonwealth when Khoraki requested bond. ECF No. 86-6 at 11:12-20, 25:15-21. And even though Blackmon was preparing for a bond appeal hearing rather than trial or a grand jury proceeding, Buckley still necessitates a finding that absolute immunity applies to her actions because her conduct was "intimately

13

associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976).

Khoraki contends that Blackmon was engaging in investigative conduct by engaging with Longoria and asking another attorney for advice. ECF No. 85 at 3-4. That argument fails because the manner in which evidence is evaluated "is exactly the kind of professional judgment call that prosecutorial immunity is designed to protect." Savage v. Maryland, 896 F.3d 260, 269-70 (4th Cir. 2018). Accordingly, Blackmon is entitled to absolute immunity to the extent that she decided to continue evaluating the evidence ahead of the bond appeal hearing rather than immediately moving to dismiss the charges against Khoraki.

Blackmon's conduct during the February 14 bond appeal hearing is also protected by absolute immunity because, in that hearing, she undoubtedly was acting in an advocative function. See Dababnah v. Keller-Burnside, 208 F.3d 467, 470 (4th Cir. 2000) (finding a prosecutor's conduct during a bond hearing, even when unrelated to the specific proceeding, is protected by absolute immunity); Phillips v. Chafin, No. 7:20-cv-107, 2020 WL 1847903, at *2 (W.D. Va. April 13, 2020) (categorizing bond hearings as a forum where a prosecutor is entitled to absolute immunity when acting in an advocative function). At the hearing, Blackmon took the position that bond should be denied "out of an abundance of caution," and she advocated for this position by presenting and discussing

14

evidence with the court. ECF No. 82-18 at 9:16-13:2. This conduct is precisely the type of conduct that absolute immunity was meant to protect. See Imbler v. Pachtman, 424 U.S. 409, 424 (1976) (reasoning that absolute immunity protects the prosecutor's duty to decide how to try claims in court). Additionally, even if Blackmon had made untrue and inaccurate statements concerning a further investigation against Khoraki during the hearing (which the Court believes has no merit based on the transcript from the hearing and Blackmon's notes from her phone conversation with Longoria), Blackmon would still be protected by absolute immunity because false statements in a court proceeding is protected advocative conduct. Carter v. Burch, 34 F.3d 257, 263 (4th Cir. 1994) ("The [Supreme] Court in Imbler specifically held that the presentation of false testimony in court is a charge for which the prosecutor is afforded absolute immunity."). Accordingly, Blackmon is entitled to absolute immunity for her conduct during the February 14, 2020, bond appeal hearing.

Lastly, to the extent that Khoraki's § 1983 claim for malicious prosecution relies on a theory of continued prosecution, see SAC ¶¶ 54-57, Blackmon's conduct following the bond appeal hearing until the charges were dismissed on February 27, 2020, is protected by absolute immunity. Khoraki claims that following the bond appeal hearing, Blackmon continued to evaluate Wallace's claims to determine if she was indeed lying as she had in the past,

15

which included discussing the case with a colleague. ECF No. 85 at 5. That is supported by Blackmon's testimony at her deposition. In other words, Blackmon did discuss Wallace's credibility issues with a colleague in order to "make a final decision of whether or not to proceed" with Khoraki's prosecution. ECF No. 82-6 at 40:19-24, 43:16-23. Evaluating evidence and deciding how to precede with the case squarely fall within the realm of advocative conduct that absolute immunity protects. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Carter v. Burch, 34 F.3d 257, 262-63 (4th Cir. 1994). Discussing evidence and litigation strategies has also been found to constitute advocative conduct that is protected under absolute immunity because it is "intimately associated with the judicial phase of the criminal process" and closely related to the decision of how to conduct a trial. Imbler v. Pachtman, 424 U.S. 409, 430 (1976); Springmen v. Williams, 122 F.3d 211, 213 (4th Cir. 1997); see, e.g., Savage v. Maryland, 896 F.3d 260, 269 (4th Cir. 2018) (finding that the act of discussing a case constituted advocative conduct that is protected by absolute immunity); Martinez V. Winner, 771 F.2d 424, 437 (10th Cir. 1985) (finding that a meeting between "the judge and prosecutors to discuss the government's strategy" was protected by absolute immunity). Accordingly, the

16

actions that Blackmon took following the bond appeal hearing until the charges were nolle prossed are protected by absolute immunity.[4]

At all times alleged in the SAC pertaining to the malicious prosecution claim under § 1983, Blackmon was acting in an advocative role rather than an investigative role. Accordingly, she is protected from liability by absolute immunity as to COUNT I.

### B. *Malicious Prosecution under Virginia Common Law (COUNT III)*

For similar reasons, Blackmon is entitled to absolute prosecutorial immunity under state law for the common law claim of malicious prosecution. A remedy for malicious prosecution is available when the plaintiff shows that a prosecution was maliciously instituted by or with the cooperation of the defendant without probable cause and the prosecution ended "in a manner not unfavorable to the plaintiff." Reilly v. Shepard, 643 S.E.2d 218 (Va. 2007). The SAC, as narrowed by the Court's Order (ECF No. 78 at 2), alleges that Blackmon's refusal to agree to bond, allusion to additional charges, and unwillingness to immediately drop the charges after receiving the report from the Chesterland County

---

[4] Khoraki also contends that Blackmon was acting in an investigative rather than an advocative role because Longoria was no longer investigating the charges after February 14, 2020. ECF No. 85 at 5. Khoraki has not identified any conduct to show that Blackmon "picked up the mantle of the investigation and pursued the matter for several more weeks" beyond further discussing the case with her colleague, id., so the Court finds that this argument lacks merit.

detective constitute malicious prosecution under Virginia law. SAC ¶¶ 72, 74.

However, all of these actions are protected by absolute immunity under Virginia law because they were all "intimately connected with the prosecutor's role in judicial proceedings." Andrews v. Ring, 585 S.E.2d 780, 785 (Va. 2003). Blackmon's position during the February 14 bond appeal hearing that Khoraki should be denied bond was part of her role as an advocate for the Commonwealth. Likewise, her statement that Longoria was "investigating other claims . . . against" Khoraki was made to support her position on bond, which is connected to her role in the judicial proceeding. ECF No. 82-18 at 11:24-13:2. Additionally, Blackmon's unwillingness to drop the charges following the bond appeal hearing while she consulted with her colleague about Wallace's credibility is protected conduct because the decision of whether or not to drop charges is clearly connected to the judicial proceedings and falls under the purview of the prosecutor. Andrews, 585 S.E.2d at 785.

Because absolute prosecutorial immunity under Virginia is supported by federal cases, shares a common origin and rationale with similar federal protection, and is slightly broader than federal protection, the fact that Blackmon's conduct is protected from federal claims is persuasive in determining that Virginia common law provides the same protection to the same conduct. See

18

Daniczek v. Spencer, 156 F. Supp. 3d 739, 762 (E.D. Va. 2016); Vuyyuru v. Jadhav, No. 3:10-CV-173, 2011 WL 1483725, at *10 n.9 (E.D. Va. Apr. 19, 2011); Andrews, 585 S.E.2d at 784-85 (citing Imbler v. Pachtman, 424 U.S. 409 (1976) and Burns v. Reed, 500 U.S. 478 (1991)).

Accordingly, because all of Blackmon's alleged conduct underlying the common law malicious prosecution claim is protected by absolute prosecutorial immunity under Virginia law, the Court will dismiss with prejudice COUNT III as to Blackmon.

## CONCLUSION

For the foregoing reasons, DEFENDANT JAIME BLACKMON'S MOTION FOR SUMMARY JUDGMENT (ECF No. 81) will be granted, and COUNTS I and III (the remaining claims against Blackmon) will be dismissed with prejudice.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 29, 2022