IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAD KHORAKI,

    Plaintiff,

v.                                    Civil Action No. 3:22-cv-70

DERRICK LONGORIA,
JAIME BLACKMON, and
JOSEPHINE WALLACE,

    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on Defendant Derrick Longoria's SECOND MOTION FOR SUMMARY JUDGMENT ("the Motion") (ECF No. 90). For the reasons set forth below, the Motion will be denied.

### BACKGROUND

In this action, the Plaintiff, Dr. Jad Khoraki ("Khoraki"), seeks damages on account of alleged malicious prosecution arising out of his allegedly unlawful arrest and continued prosecution based on false allegations made by a former girlfriend. The facts as relevant to Derrick Longoria ("Longoria") are set forth below as they are presented in the Second Amended Complaint ("SAC") and the evidence offered in support of, and in opposition to, the Motion. As is required, favorable inferences are extended to Khoraki, the non-moving party.

## I. Factual Background

From March 2019 to December 2019, Khoraki was in a "casual relationship" with Josephine Wallace ("Wallace"). SAC ¶ 12. According to the SAC, on January 20, 2020, Wallace made a series of false reports to the Richmond Police Department, alleging that Khoraki had assaulted her, threatened her, and was stalking her. Id. ¶ 14; ECF No. 109-2. On January 21, 2020, a magistrate granted Wallace's request for a warrant for Khoraki's arrest. SAC ¶ 14; ECF No. 95-3 at 1-2. The police report from the initial interview for these allegations indicates that the officer "observed a dark bruise under [Wallace's] left eye." ECF No. 60-1 at 5. Wallace had informed the officer that Khoraki had struck her in the left eye on January 20, 2020, but there is no other information indicating that the bruise was from this encounter or whether the bruise was consistent with her statement. Contrary to the statement that Wallace gave in the initial interview with the police officer, Wallace's criminal complaint signed on January 20 stated that Khoraki had punched her in the left eye on December 27, 2019. ECF No. 109-2 at 2.

On January 25, 2020, Wallace also secured from a magistrate an arrest warrant on the strength of her allegation that Khoraki had stalked her between January 23 and 25, 2020. SAC ¶ 15; ECF No.

95-3 at 3-4. On January 26, 2020, Khoraki was arrested on the warrants that Wallace has secured, but he was released on bond shortly after. SAC ¶ 17-18.

On January 21, 2020, Longoria was assigned as the case investigator. SAC ¶ 16. The next day, Longoria received and reviewed the lethality assessment protocol ("LAP")[1] that Wallace had completed the previous day with a different officer. ECF No. 95-1 at 12:19-21. On the LAP, Wallace was asked whether she had ever been choked by her partner (Khoraki), and she responded "no." Id. at 91:16-22, 149.

After reviewing the LAP, Longoria reached out to Wallace, and she indicated that she wanted to speak with him about "ongoing abuse." ECF No. 95-1 at 12:24-14:2. The two set up a meeting for January 29, 2020, to discuss that topic. Id. at 13:21-14:2.

In the January 29 meeting with Longoria, Wallace made allegations about incidents that she said had taken place in September 2019. In particular, she claimed that, on September 15, 2019, Khoraki had "punched her in the eye with a closed fist and then slammed her head against the door causing a knot." ECF No. 95-1 at 14:21-23. Wallace stated that she had to knee Khoraki in

---

[1] A LAP (also referred to as a lethality assessment screening, or "LAS") is an assessment done by the Richmond police after a domestic assault is disclosed to them.

the groin to get away from him, which, in turn, led Khoraki to put his hands around Wallace's neck and to choke her while saying, "Bitch, I will kill you." Id. at 15:1-6.

Wallace further claimed that, on a separate date, Khoraki had pulled out a gun, pointed it at her, and told her he could kill her with it. Id. at 15:10-12. Wallace explained to Longoria that she perceived this as a threat on her life rather than a joke because he had already assaulted her and previously made threats to kill her. Id. at 15:12-15.

To corroborate the allegations she made on January 29, Wallace gave Longoria what she represented to be photographs of her injuries that allegedly included time stamps of the day following the dispute, September 16, 2019. ECF No. 95-1 at 134-38.[2] Longoria took the photographs to corroborate Wallace's account of the September 15, 2019, dispute. Id. at 16:20-18:5.

Wallace also alleged that Khoraki had raped her, but Longoria did not "dive into full details" of the rape so as not to "trigger any traumas." ECF No. 95-1 at 25:14-26:2. Why Longoria chose this course is perplexing considering that, in the same interview,

---

[2] The photographs with the time stamps are not in the record, and Khoraki disputes whether the photographs were time stamped. ECF No. 97 at 3 ¶ 18. Longoria maintains that, when Wallace showed him the photographs on her phone during the interview, he saw a time stamp with the date September 16, 2019. ECF No. 95-1 at 19:3-15.

Wallace disclosed to Longoria that previously she had reported a rape (by another man) to the Chesterfield County police but that the Chesterfield police did not believe her. Id. at 153.

It appears that Longoria asked Wallace why she did not report these alleged assaults by Khoraki until now, and Wallace replied that "she was in fear of her safety." ECF No. 60-2 at 5. There is no evidence that Longoria asked Wallace about the inconsistencies between her statement on January 29 and her response on the LAP on January 21.[3]

On January 26, 2020, Khoraki's attorney, Miriam Airington-Fisher, contacted Longoria about the set of warrants that Wallace had procured on her own and told Longoria that Khoraki was planning on turning himself in. ECF No. 95-1 at 58:20-59:3. Airington-Fisher unsuccessfully tried to contact Longoria on subsequent occasions, including to discuss an alibi, but the record is unclear as to when she placed those calls. Id. at 59:7-62:5. Regardless, it is undisputed that Longoria never returned those calls.

After obtaining Wallace's statement on January 29 and reviewing the photographs, Longoria called either Alison Martin or Joni Burroughs, both of whom served as Assistant Commonwealth's

---

[3] Wallace also provided Longoria with the record of a text communication from Khoraki's previous girlfriend warning Wallace about his character and duplicity, although it is not clear from the record when Longoria received these messages. ECF No. 95-1 at 154-59. However, nothing in the texts from the previous girlfriend bespoke violent conduct by Khoraki.

5

Attorneys, to verify that there was probable cause to arrest Khoraki and to ensure "they were on board with . . . bringing these charges forward." ECF No. 95-1 at 22:21-23:2, 23:20-24:1. In doing so, Longoria conveyed to the lawyer (Martin or Burroughs) the statement that Wallace had given him about Khoraki's conduct on September 15, 2019, and the fact that there was a delay in the reporting. Id. at 23:3-16. However, Longoria did not tell the lawyer about Wallace's response to the LAP which was inconsistent with her statement on January 29. According to Longoria, he omitted that fact because, based on his experience, he believed inconsistent statements occurred frequently due to numerous factors other than false testimony. Id. at 26:6-27:17. Nor did Longoria tell the lawyer that Wallace previously had reported a rape to Chesterfield police officers or that those police officers did not believe her.

Based on what Longoria said, the Assistant Commonwealth's Attorney told Longoria that there was probable cause and that he could take the matter to a magistrate to see if there was enough probable cause to obtain a warrant for the September 2019 alleged strangulation, brandishing a firearm, and the domestic assault. ECF No. 95-1 at 23:17-24:11. Longoria chose not to interview Khoraki at that time because, in his view, Wallace had corroborated her statements by providing the photographs. Id. at 56:17-24.

On January 31, 2020, Longoria presented the September 2019 allegation to a magistrate, and a felony warrant for Khoraki's arrest on a strangulation charge and misdemeanor warrants for Khoraki's arrest on a charge of assault and battery, respectively, were issued. SAC ¶ 23. However, the record contains no information about what Longoria told the magistrate because all those records were destroyed by the court when Wallace's charges were dropped and the record of them was expunged. ECF No. 109 at 2-3.[4] On February 6, 2020, Khoraki was arrested on those warrants.[5]

On February 13, 2020, Longoria spoke about Khoraki with Jaime Blackmon ("Blackmon"), the Assistant Commonwealth's Attorney initially assigned to prosecute the case. ECF No. 95-1 at 93:4-5. As reflected in the handwritten notes taken by Blackmon during the telephone call with Longoria, Blackmon and Longoria discussed his interview with Wallace, the evidence that he had gathered to that

---

[4] On January 31, 2020, between the issue of the warrant and Khoraki's second arrest, Longoria issued a Wanted poster for Khoraki. ECF No. 95-1 at 139. However, this fact is not relevant in the legal analysis to determine whether probable cause existed to obtain the warrant.

[5] This time, he was held without bond until he was released on February 17, 2020. SAC ¶¶ 24-25. All charges were dismissed by March 10, 2020.

point, and the rape accusation that Wallace had made against Khoraki. Id. at 141. Longoria also sent Blackmon the pictures provided by Wallace and the text message thread from Khoraki's previous girlfriend. Id. at 154-59, 161-65.

Just before that call, Blackmon had forwarded to Longoria an email about a new report from the Chesterfield County police about the previous false report made by Wallace, so the two discussed the investigative steps Longoria planned to take to learn more about the Chesterfield situation. ECF No. 95-1 at 141.

Longoria again communicated with Blackmon on the morning of February 14, 2020, when Blackmon sent Longoria the detailed report by the Chesterland County detective who had investigated Wallace's previous false accusations against another man, including the investigative steps that the Chesterfield police had taken to disprove her claims. ECF No. 95-1 at 150.

During a bond appeal hearing on February 14, 2020, the court granted Khoraki bond in the amount of $10,000 and ordered his release with electronic monitoring and the surrender of his passport. ECF No. 60-3 at 13:22-14:6. After a three-day administrative delay to prepare the electronic monitoring system, Khoraki was released on February 17, 2020. SAC ¶ 25. At the next hearing on February 27, 2020, Blackmon asked the court to nolle pros all the charges, and, by March 10, 2020, all charges against Khoraki were dismissed. Id. ¶ 39. Khoraki contends that this entire

experience "caus[ed] irreparable harm to his personal and professional life," including extreme emotional distress, unwarranted legal fees, and damage to his reputation. Id. ¶ 40. He seeks compensatory damages in the amount of five million dollars and punitive damages in the amount of one million dollars.[6] SAC at 15-16.

## II. Procedural History

Khoraki filed this action on February 2, 2022, asserting two counts against Longoria. Khoraki filed the SAC (ECF No. 60) on June 3, 2022. COUNT I presents a claim for Malicious Prosecution under 18 U.S.C. § 1983. SAC ¶¶ 42-58. COUNT III presents a claim for Malicious Prosecution under Virginia law. Id. ¶¶ 65-75.

Longoria filed a MOTION TO DISMISS (QUALIFIED IMMUNITY) (ECF No. 61) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted as well as an Answer (ECF No. 63). On August 2, 2022, the Court issued an ORDER (ECF No. 78) denying the Motion to Dismiss and ordering discovery on the limited issues of whether Longoria is entitled to qualified immunity and

---

[6] Khoraki also brought additional claims against Blackmon and Wallace. Summary judgment was entered in favor of Blackmon (ECF No. 99). Khoraki seeks three million dollars in damages against Wallace. SAC at 16. She has no motions pending.

whether he had probable cause to obtain the January 31, 2020, arrest warrant notwithstanding Wallace's delay in reporting, inconsistent statements, and the Chesterfield situation.[7] ECF No. 78 at 3-4.

When discovery on those limited issues was completed, Longoria filed a MOTION FOR SUMMARY JUDGMENT (ECF No. 79), which the Court denied without prejudice in order to better refine the briefing on the issues in perspective of more relevant authorities than those on which the original motion for summary judgment had been argued. ECF No. 89. Longoria subsequently filed the Motion, and the Court heard argument on it on February 1, 2023. Following the hearing, the Court ordered supplemental briefing on Khoraki's state law claim because it had not been adequately briefed in the original papers. ECF No. 106.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment under Fed. R. Civ. P. 56 when the movant can show "that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 requires the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to

---

[7] The Court also ordered discovery on a limited set of issues pertaining to Blackmon and whether she was entitled to absolute or qualified immunity, neither of which is relevant to the Motion. ECF No. 78 at 2.

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Additionally, "damages suits concerning constitutional [and certain statutory] violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity." Butz v. Economou, 438 U.S. 478, 508 (1978).

## DISCUSSION

COUNT I is described as a claim of malicious prosecution by virtue of an unlawful Fourth Amendment seizure arising from the arrest warrants obtained by Longoria on January 31, 2020. COUNT III asserts the same claim under Virginia law.[8] The only element of either claim that is at issue in the Motion is whether there was probable cause to support Khoraki's arrest. Also, Longoria asserts (for the same element) that he is entitled to qualified immunity, but that too turns on the probable cause element.

---

[8] In some respects, both COUNTS I and III sound in the tort of false arrest rather than malicious prosecution. Both torts require proof that there was no probable cause for the proceeding/arrest. Compare 3 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions § 121:20 (6th ed. updated Aug. 2022), and 2 The Model Jury Instructions Comm., Virginia Model Jury Instructions-Civil § 41.000 (2017), with, 3 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions § 121:40 (6th ed. updated Aug. 2022), and 2 The Model Jury Instructions Comm., Virginia Model Jury Instructions-Civil § 38.000 (2017).

## I. Probable Cause for January 31 Warrants

Longoria's first argument is that he had probable cause to obtain the warrants, and, according to the Motion, Longoria is entitled to summary judgement on COUNTS I and III for that reason alone. A "malicious prosecution" claim brought under 42 U.S.C. § 1983 is "simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). To assert a successful § 1983 claim for malicious prosecution, a plaintiff must, inter alia,[9] establish that: (1) "the defendant . . . seized plaintiff pursuant to legal process that was not supported by probable cause."[10] Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017) (quotations omitted). Likewise, in Virginia, a remedy for malicious prosecution is available when the plaintiff shows that, inter alia, a prosecution was instituted by or with the cooperation of the defendant without probable cause. Reilly v. Shepard, 643 S.E.2d 218 (Va. 2007).

---

[9] Claims for malicious prosecution have other elements, as do claims for false arrest. Those other elements are not the subject of the Motion. Hence, there is no need to address them in this Memorandum Opinion.

[10] There is no dispute that the charges against Khoraki were eventually nolle prosequied and thus that the criminal proceedings terminated in his favor.

### a. *Applicable Law Respecting Probable Cause*

Probable cause is a "practical, nontechnical conception" that requires consideration of what a reasonable and prudent person would believe and whether an officer had a "reasonable ground for belief of guilt." Brinegar v. United States, 338 U.S. 160, 175-76 (1949). It "is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). To determine if probable cause existed for an arrest, courts employ a "totality-of-the-circumstance approach" and ask whether "the totality of the circumstances indicate to a reasonable person that a 'suspect has committed . . . a crime.'" Gates, 462 U.S. at 231; United States v. Humphries, 372 F.3d 653, 659 (4th Cir. 2004). Probable cause "is less demanding than a standard requiring a preponderance of the evidence," so an officer's belief does not need to be more likely true than false for probable cause to exist. United States v. Ortiz, 669 F.3d 439 (4th Cir. 2012) (citing Humphries, 372 F.3d at 660).

The Fourth Circuit previously has divided the probable-cause inquiry into two factors: (1) "the suspect's conduct as known to the officer" and (2) "the contours of the offense thought to be committed by the conduct." Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017). When determining whether an officer had probable cause

when applying for an arrest warrant, "[a] court should only consider the information the officers had at the time they sought the warrant." Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017). Additionally, courts "'do not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause.'" Gilliam v. Sealey, 932 F.3d 216, 234 (4th Cir. 2019) (quoting Smith, 848 F.3d at 253).

When investigating a possible offense before obtaining a warrant, "an officer may not disregard readily available exculpatory evidence of which he is aware," but "the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause." Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000). Likewise, "[r]easonable law enforcement officers are not required to 'exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established.'" Id. (quoting Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991)). Additionally, "[w]here a police officer obtains a warrant from a neutral magistrate, that warrant will typically shield the officer from liability for a malicious prosecution because the magistrate's actions break the chain of causation." Bonnell v. Beach, 401 F. Supp. 3d 663, 675 (E.D. Va. 2019). However, officers are not shielded from liability if they "lied to or misled the prosecutor," "failed to disclose exculpatory evidence," "or unduly pressured the prosecutor to seek the

14

indictment." Id.; see also Graham v. Gagnon, 831 F.3d 176, 183 (4th Cir. 2016) ("[W]e have repeatedly held that arrest warrants do not confer immunity if it was objectively unreasonable to conclude there was probable cause for the arrest.").

These well-established precepts guide the resolution of the Motion which is best understood in perspective of the arguments made by the parties.

### b. Parties' Arguments

Longoria argues that he had probable cause to obtain the warrants because Wallace gave a specific identification of Khoraki as the perpetrator, provided specific details of what happened, and had photographs corroborating her testimony. ECF No. 95 at 15-16. Further, Longoria argues that any deficiencies in probable cause were cured when the Assistant Commonwealth's Attorney ratified the decision to obtain warrants and when the magistrate issued the warrants. Id. at 17. Finally, Longoria contends that he did not have available any exculpatory evidence at the time he sought the warrants and that he was not required to make credibility determinations or to investigate every lead before applying for a warrant, including the prior report to Chesterfield County police. Id. at 17-20.

Khoraki takes the view that: (1) Longoria should have further investigated the potential leads because there were no

individualized facts linking Khoraki to the crime;[11] (2) Longoria was required to investigate potential alibi evidence, Wallace's inconsistent statements, and reasonably discoverable information but failed to do so (citing Clipper v. Takoma Park, 876 F.2d 17 (4th Cir. 1989), Sevigny v. Dicksey, 846 F.2d 953 (4th Cir. 1988), and Trail v. Cressell, 494 F. Supp. 3d 349 (W.D. Va. 2020));[12] (3) Wallace's reliability necessarily had to be considered by Longoria given her inconsistent statements respecting whether Khoraki had previously choked her and the fact that she had admitted to Longoria that the Chesterfield police did not believe her previous report of a rape by another man;[13] and (4) Longoria is not protected by the Assistant Commonwealth's Attorney and magistrate's approval because he did not share with those individuals the full scope of information, having omitted exculpatory information.[14]

### c. Analysis

The record here shows that, when Longoria applied for the warrants on January 31, 2020, he knew or reasonably should have known the following information: (1) Wallace's statement recounting three specific instances where Khoraki had allegedly

---

[11] ECF No. 97 at 10-12.

[12] ECF No. 97 at 11-13, 14-15.

[13] ECF No. 97 at 15-16.

[14] ECF No. 97 at 16-18.

assaulted her or threatened her; (2) photographs presented by Wallace that, if they were time-stamped, corroborated her statements;[15] (3) Wallace's responses to the LAP administered eight days previously in which Wallace had denied that she had been choked by Khoraki which was entirely inconsistent with the statement she gave Longoria during the interview on January 29, 2020; (4) there was a four-month gap between the alleged September 2019 incidents and the date Wallace reported them to Longoria; (5) Wallace attributed that delay to fear for her safety; (6) Wallace previously had reported a rape to Chesterfield County police, and the police did not believe her report; (7) text messages from Khoraki's alleged ex-girlfriend warning that Khoraki was a liar but not describing Khoraki as a violent person; (8) a magistrate had issued an arrest warrant for Khoraki on January 21, 2020, based on a criminal complaint filed by Wallace on January 20, 2020; (9) the criminal complaint stated that Khoraki had punched Wallace in her left eye on December 27, 2019, but that the day after filing the criminal complaint, Wallace had told an officer that Khoraki had punched her in the left eye on a different date (January 20, 2020); (10) the officer observed a bruise; (11) Wallace had secured an arrest warrant dated January 25, 2020, for stalking charges

---

[15] Longoria says that the photographs bore time stamps that corroborated the September 2019 assault claimed by Wallace, but the photographs in the record are not time-stamped.

that allegedly occurred between January 23 and January 25, 2020; (12) Khoraki's attorney had telephoned Longoria on January 26, 2020, concerning the first set of warrants and another phone call at an unspecified date advising that Khoraki had an alibi; and (13) Khoraki had been detained on the first set of warrants obtained by Wallace.

Without anything more, Wallace's January 29, 2020, statements recounting the alleged assaults and the allegedly corroborating photographs might well have given Longoria probable cause to pursue an arrest warrant for Khoraki. However, on January 31, 2020, Longoria knew much more than that, and much of what he knew was highly pertinent to both the existence of probable cause and to the claim of qualified immunity.

First, Longoria knew from Wallace that other police officers did not accept as true a previously reported rape in Chesterfield County. Second, in addition to that important red flag, Longoria was aware that Wallace also made a critical inconsistent statement (saying on the LAP that she had never been choked by Khoraki but telling Longoria eight days later, and well after the LAP statement was made, that Khoraki had choked her). That is yet another fact casting yet more doubt on Wallace's charges against Khoraki. Lastly, Longoria had additional inconsistent information: the criminal complaint signed January 20, 2020, that stated Khoraki

18

punched Wallace in the left eye on December 27, 2019, but a police report said that the assault had occurred on a different date, January 20, 2020.

These three critical pieces of evidence not only brought Wallace's credibility into doubt on key components of probable cause respecting the September 2019 allegations but also were of the force and effect that should have alerted any reasonable police officer of the need to investigate further before trying to secure a warrant. See Illinois v. Gates, 462 U.S. 213, 232-33 (1983) (explaining how reliability and credibility play into the totality-of-the-circumstances analysis for probable cause). This is especially true given that, insofar as Longoria was aware, Khoraki was still in the state's custody on the first set of warrants, so there was no imminent threat to Wallace or ongoing exigency that would require Longoria to quickly obtain a warrant before investigating further the reliability of the complaining witness. ECF No. 95-1 at 29:17-30:1. Rather, Longoria had time to resolve at least some of the inconsistencies to ensure Wallace was credible before he obtained another warrant for Khoraki.

On the current record, the totality of the circumstances analysis necessarily must include the undisputed facts that Wallace had given two dramatically opposed statements about whether Khoraki had choked her (one-yes and one-no); that Wallace herself advised that other police officers did not find her

19

credible when reporting an alleged rape; and that Wallace had provided different dates for the conduct of which she complained that Khoraki had punched her in the left eye. That is because a law enforcement officer is "held to knowledge of reasonably discoverable information bearing upon probable cause." Sevigny v. Dicksey, 846 F.2d 953, 957 n.5 (4th Cir. 1988) (citing BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986)).

Where, as here, the information is not clear, a "police officer acting reasonably in the circumstances [must] clarify the factual situation." Sevigny, 846 F.2d at 958. That is an important precept because the power of arrest is an awesome one; and, therefore, before exercising that power, "'it is incumbent upon law enforcement officers to make a thorough investigation and exercise reasonable judgment.'" BeVier, 806 F.2d at 127 (quoting Moore v. The Marketplace Restaurant, 754 F.2d 1336, 1345-46 (7th Cir. 1985)). Accordingly, "[a] police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest." BeVier, 846 F.2d at 128. And, the failure to elicit further facts indicating that an arrest should not be made is unreasonable and forecloses a finding of probable cause.

The record here would permit a reasonable jury to find that Longoria closed his eyes to facts that had to be examined to clarify what was unclear: whether the crime alleged by Wallace against Khoraki in September 2019 had ever occurred. Moreover, a

reasonable jury could conclude that, if Longoria had paid heed to what he without doubt knew and had conducted a reasonable investigation, Khoraki likely would not have been arrested. In particular, if Longoria had called the Chesterfield police (after being alerted by Wallace that these officers did not believe her), he would have learned that Wallace had fabricated a story there similar to the one she told Longoria about Khoraki. And, of course, Longoria knew that Wallace had given conflicting statements about whether Khoraki had previously choked her. Moreover, he had documents that showed Wallace had given inconsistent statements regarding when Khoraki allegedly punched her in the left eye. Taken together, those facts permit a finding that there was not probable cause to arrest Khoraki, at least until a more complete investigation could have been conducted. One that, for example, would include securing Khoraki's statement and talking with his counsel respecting, _inter alia_, the alibi evidence pertaining to what Wallace had told the magistrate to obtain the earlier warrants on January 21 and 25, 2020, and one that would have taken into account the important inconsistency in what Wallace had said about choking as well as the significant disclosure that the Chesterfield police had not believed her.

The rather gaping hole in the probable cause evidence cannot be salvaged by the fact that Longoria received permission from the Assistant Commonwealth's Attorney to apply for the warrants or the

fact that the magistrate issued the warrants. That is because Longoria did not disclose to either the Assistant Commonwealth's Attorney or the magistrate the material information cited above.

Longoria testified at deposition that he told the Assistant Commonwealth's Attorney about Wallace's statements of the September event and that she had delayed reporting it. ECF No. 95-1 at 22:21-25:11. However, there is nothing in the record to suggest that Longoria told the Assistant Commonwealth's Attorney about the inconsistent statements between the LAP and the January 29 interview, the fact that Wallace had previously reported a rape to Chesterfield County police and they did not believe her, that Khoraki was currently in the state's custody, or that there were inconsistencies in Wallace's reports surrounding the January 21, 2020, warrant. Longoria's failure to provide the Assistant Commonwealth's Attorney with the totality of the circumstances to evaluate probable cause amounted to an omission of material facts, so Longoria is not shielded by the Assistant Commonwealth's Attorney's approval to pursue a warrant. See Wadkins v. Arnold, 214 F.3d 535, 542 (4th Cir. 2000) ("[T]he mere fact that [the detective] acted upon the Commonwealth's Attorney's authorization

. . . does not automatically cloak [him] with the shield of qualified immunity."); Evans v. Chalmers, 703 F.3d 636, 647-48 (4th Cir. 2012) ("[O]fficers may be liable if they have lied to or mislead the prosecutor [[or] failed to disclose exculpatory evidence." (citations omitted)).

Likewise, there is nothing in the record that tell us what Longoria told the magistrate when obtaining the warrant, and that information cannot be recovered because the state court deleted the digital files and shredded the papers when expunging Khoraki's criminal charges. ECF No. 109 at 2-3. Because there is nothing signaling otherwise, a reasonable jury could infer that Longoria provided the same information to the magistrate that he had given to the Assistant Commonwealth's Attorney.

For the foregoing reasons, Longoria is not entitled to a finding that there was probable cause to arrest Khoraki. Hence, his motion for summary judgment on that ground must be denied.

## II. Qualified Immunity

Next, the analysis turns to Longoria's argument that he is protected by qualified immunity and thus is entitled to summary judgment on this basis. See Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000) ("[Defendant] may be entitled to qualified immunity even if the warrants at issue are later determined to have been lacking in probable cause.").

### a. *Applicable Law Regarding Qualified Immunity*

Federal "[q]ualified immunity shields government officials from liability in a § 1983 suit as long as their conduct has not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Humbert v. Mayor and City Council of Balt. City</u>, 866 F.3d 546, 555 (4th Cir. 2017) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). The analysis of whether there is qualified immunity involves a two-step inquiry. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). First, the Court considers whether the record would permit a finding that Longoria violated Khoraki's constitutional right. <u>Id.</u> at 232. Second, the Court must assess whether the right at issue was "'clearly established' at the time of defendant's alleged conduct." <u>Id.</u>

"To be 'clearly established,' the 'contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" <u>Bonnell v. Beach</u>, 401 F. Supp. 3d 663, 673 (E.D. Va. 2019) (quoting <u>Hill v. Crum</u>, 727 F.3d 312, 321-22 (4th Cir. 2013) (citations omitted)). The "clearly established" assessment is made with reference to decisions of the Supreme Court of the United States or the Fourth Circuit. If there is no controlling authority from those sources, a district court may look to "a consensus of cases of persuasive authority from

other jurisdictions, if such exists." Bonnell, 401 F. Supp. 3d at 674 (quoting Feminist Majority Found. v. Hurley, 911 F.3d 674, 704 (4th Cir. 2018) (citations and emphasis omitted)).

Although similar, the analysis for Virginia's state version of qualified immunity differs from the federal protection. Coleman v. Jones, No. 20-7382, 2022 WL 2188402, at *8 (4th Cir. June 17, 2022) (citing Viers v. Baker, 841 S.E.2d 857, 861 (Va. 2020)). In Virginia, an officer is protected from suit if he shows that: (1) he had a good-faith belief that his actions were lawful and (2) that belief was reasonable. Lawhon v. Edwards, 477 F. Supp. 3d 428, 450-51 (E.D. Va. 2020) (quoting DeChene v. Smallwood, 311 S.E.2d 749, 751 (Va. 1984)). Additionally, for malicious prosecution claims, "reliance upon advice of reputable counsel after full disclosure of all material facts provides a complete defense to an action for malicious prosecution, even if the attorney's advice is wrong." Shrewsbury v. Williams, 439 F. Supp. 3d 765, 783 (W.D. Va. 2020) (quoting Andrews v. Ring, 585 S.E.2d 780, 787 (Va. 2003) (quotations omitted)).

### b. Parties' Arguments

Longoria argues that a reasonable officer would conclude that probable cause existed based on the information Longoria had available to him at the time. ECF No. 95 at 24-25.[16] Longoria also

---

[16] He also contends that he is protected because a warrant was obtained before the arrest. ECF No. 95 at 25-26. That argument

argues that there is no binding or persuasive authority that makes it sufficiently clear to every reasonable officer that "rely[ing] on an eyewitness statement, photos, texts, advice of counsel and a magistrate in light of conflicting evidence" is unlawful. Id. at 26-27. As for the state law claim, Longoria argues that he "believed, reasonably and in good faith, [that] his arrest of [Khoraki] was valid," notwithstanding the inconsistent statements and knowledge that Chesterfield County police did not believe Wallace's previous report of a rape because he had the assertedly corroborating photographs and what he calls the "duplicitous" text messages. ECF No. 110 at 2-3. Additionally, Longoria argues that his "good faith reliance on the advice of reputable counsel . . . entitles [him] to immunity" because he sought the advice of the Assistant Commonwealth's Attorney before going to a magistrate to get the warrant. Id. at 3-4.

Khoraki takes the view that Longoria's failure to investigate was objectively unreasonable. Relying on Sevigny v. Dicksey, 846 F.2d 953 (4th Cir. 1988), Khoraki argues that a reasonable officer would have further investigated the information before him, which (had such investigation been made) would have negated probable cause. ECF No. 97 at 19-20. As for the state law claim, Khoraki

---

simply does not come into play on the facts of this case because it was Longoria who obtained the warrant and it was he who did not disclose facts known to him that were material to probable cause.

argues that Longoria acted objectively unreasonably and without probable cause when he obtained the arrest warrants because he "disregarded a litany of red flags" and failed to take "fundamental investigatory steps," including interviewing Khoraki, other witnesses, or the Chesterfield County police. ECF No. 111 at 3-4. Additionally, Khoraki contends that Longoria is not entitled to immunity based on the approval given by the Assistant Commonwealth's Attorney and magistrate because Longoria failed to convey "a full accounting of the inconsistences and holes in Ms. Wallace's report," including what information Longoria did provide to the Assistant Commonwealth's Attorney and the magistrate, and that those omissions are issues of material fact that a jury should decide. Id. at 5-7.

### c. Analysis

#### 1. Federal Claim

For the reasons set out in Section I(c) above, a reasonable juror could conclude on the record that there was not probable cause for obtaining the arrest warrants for Khoraki on January 31, 2020. An arrest absent probable cause is a clear violation of the Fourth Amendment. Dunaway v. New York, 442 U.S. 200, 206-08 (1979); Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996). And, the right at issue must be defined with reasonable specificity. Taylor, 81 F.3d at 434. Here, it is the right to be free from arrest when the prosecuting officer has substantial reasons to doubt the validity

of the crime alleged by the complaining witness and fails to conduct an investigation to clarify the material inconsistent evidence and to be able to assess the complaining witness's credibility about the offending conduct of which she complained.

An arrest pursuant to a warrant is unconstitutional if the warrant was obtained by an officer who omitted material facts or failed to disclose exculpatory evidence. Evans v. Chalmers, 703 F.3d 636, 647-48 (4th Cir. 2012); Miller v. Prince George's Cnty., Md., 475 F.3d 621, 627-28 (4th Cir. 2007). An officer who acted with "reckless disregard for the truth," or who "failed to inform the judicial officer of [material] facts he knew would negate probable cause," violates the Fourth Amendment right to be free from unreasonable seizure. Miller, 475 F.3d at 627 (quotations omitted).

As explained above, on the record before the Court, a reasonable jury could conclude that Longoria recklessly omitted material facts when seeking the arrest warrants on January 31, 2020. A juror could reasonably conclude that Longoria did not disclose the totality of the information known to him, especially the inconsistencies in Wallace's statements, the false report to Chesterfield County police, and the significant date discrepancy respecting the January 20 report. Although Longoria was not required to disclose every fact he knew relating to the case to the magistrate, he was required to disclose facts that he knew

28

could negate probable cause, and, on the record, a reasonable jury could find that he failed to do so. United States v. Lull, 824 F.3d 109, 115 (4th Cir. 2016) (explaining that not "every piece of information gathered in the course of an investigation" needs to be presented to the magistrate when obtaining a warrant). Rather, Longoria's deposition testimony permits a jury to find that he blatantly ignored the inconsistencies[17] that brought Wallace's credibility into serious doubt without determining the reason for the inconsistencies.

The right at issue also was a clearly established right at the time Longoria procured the warrants on January 31, 2020. Settled law, at the time, taught that an officer need not pursue every "potentially exculpatory lead," but also that he "may not disregard readily available exculpatory evidence of which he is aware." Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000). In Sevigny v. Dicksey, the Fourth Circuit found that a police officer was not protected by qualified immunity when he failed to properly assess the circumstances surrounding a potential crime before arresting the mother of a child who had driven a car into a garage. 846 F.2d 953, 957 (4th Cir. 1988). The officer failed to make "even rudimentary inquiries of neighbors" that would have verified the

---

[17] The inconsistencies being Wallace's inconsistent responses regarding whether Khoraki choked her, ECF No. 95-1 at 26:6-27:17, and the different dates for when Khoraki allegedly punched her in the left eye. Compare ECF No. 60-1 at 5, with ECF No. 109-2 at 2.

true nature of what had happened and shown there was no probable cause for the arrest. Id. at 958. While the facts in Sevigny are not precisely on "all-fours" with the case presently before the Court, Hunter v. Town of Mocksville, N.C., 789 F.3d 389, 401 (4th Cir. 2015), the reasoning that led to the Fourth Circuit's holding clearly established that Longoria needed to do more than simply ignore the serious inconsistencies with which he was presented by Wallace's contradictory statements and accept her story at face value. Nor under Sevigny was Longoria free to accept Wallace's assertion once he knew that the Chesterfield police did not believe her.

Just as in Sevigny, "[t]here was no exigency which prevented"[18] Longoria from resolving the inconsistencies that undermined Wallace's credibility before seeking warrants from a magistrate. Sevigny, 846 F.2d at 958. Likewise, Longoria ignored information that was in his possession or readily available just as the officer in Sevigny failed to interview other witnesses who would have clarified the suspect's statements. Id. at 955; see also BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986), quoted in

---

[18] Longoria testified that, at the time, he thought that Khoraki was still in confinement based on the arrest made on the basis of the warrants obtained by Wallace on her own. ECF No. 95-1 at 29:17-30:1. It is irrelevant that, at the time, Khoraki had been released because it is what Longoria knew at the time that is relevant.

Sevigny, 846 F.2d at 957 n.5 ("A police officer may not close his or her eyes to the facts that would help clarify the circumstances of an arrest.").

Clipper v. Takoma Park, Md., 876 F.2d 17 (4th Cir. 1989), also establishes that Longoria needed to do more investigating before seeking the warrants against Khoraki. In Clipper, the Fourth Circuit affirmed a jury's determination that an officer was not protected by qualified immunity when the officers failed to pursue evidence that the suspect was at another place during a bank robbery. Id. at 19. The Fourth Circuit found that the combination of a failure to investigate leads, uncertain identifications, and "the speculative nature of the other information and investigative instincts upon which [the officer] relied in making the arrest form[ed] a sufficient evidentiary base to sustain the verdict." Id. at 20.

In this case, Longoria failed to further investigate by either calling the Chesterfield County police, attempting to clarify the facts respecting the inconsistency between what Wallace said about choking in the LAP and in the January 29 interview (eight days later), resolving the December 27, 2019-January 20, 2020 discrepancy, and returning Khoraki's counsel's calls to set up an interview or learn of an alibi. While there was no uncertain identification by Wallace, her credibility was brought into serious question through at least three pieces of evidence: her

inconsistent statements about Khoraki choking her, her inconsistent statements between the criminal information on January 20, 2020, and the police report on January 21, 2020, and her own admission that the police previously did not believe her when she reported a rape.

In sum, it was clearly established by <u>Miller</u>, <u>Sevigny</u>, <u>Clipper</u>, and <u>BeVier</u>, that Longoria could not omit material facts to the magistrate when he obtained the warrants and that he needed to do further investigation when the totality of the circumstances did not definitively show probable cause. Accordingly, on the record before the Court, a reasonable jury could find that Longoria violated Khoraki's clearly established constitutional rights, so he is not protected by qualified immunity.

### 2. State law claim

As for the state law claim, the current record could permit a finding that Longoria had a good-faith belief that his actions were lawful, but the record would also permit a finding that his assertedly good-faith belief was not reasonable in light of totality of the information. Indeed, a reasonable jury could find that Longoria's failure to investigate known, potentially exculpatory evidence was a reckless disregard of the obligation to investigate.

Even if it is assumed that Longoria was acting in good faith, it cannot be said, as a matter of law, that his actions were

objectively reasonable. While Wallace's statements during the January 29, 2020, interview and the allegedly corroborating photographs provide some support to seek a warrant, Longoria ignored very significant inconsistencies and other information that would give a reasonable officer in his position pause to continue seeking the warrants without first ensuring that Wallace was credible. A reasonable officer would have pursued at least one avenue of further investigation, whether that be clarifying the inconsistencies, interviewing Khoraki, or reaching out to the Chesterfield County police to learn more about the previous false reports. This is particularly true given that, as far as Longoria claims to be aware, Khoraki was in the state's custody on the first set of warrants and did not pose a threat to Wallace. If the jury concludes, as well it could, that Longoria did not act in an objectively reasonable manner, he will not be protected by the principles of qualified immunity from the state law malicious prosecution claim.

Longoria also cannot successfully assert the defense from Andrews v. Ring that he relied upon the advice of the Assistant Commonwealth's Attorney because Longoria did not provide a "full disclosure of all material facts." 585 S.E.2d 780, 787 (Va. 2003). As discussed above, Longoria only told the Assistant Commonwealth's Attorney about Wallace's allegations and the delay in reporting. ECF No. 95-1 at 23:3-16. Longoria did not disclose

33

the inconsistencies between the LAP and Wallace's statements, the inconsistencies between the criminal information and the police report, or the false reports to Chesterfield County police. These facts were material as to whether probable cause existed because they undermined Wallace's credibility, which was critical to the Assistant Commonwealth's Attorney's analysis. Accordingly, because a jury reasonably could find that Longoria did not fully disclose all material facts when seeking the Assistant Commonwealth's Attorney's approval to seek the arrest warrants, he cannot rely on this defense to the state law malicious prosecution claim.

### CONCLUSION

For the foregoing reasons, Longoria's SECOND MOTION FOR SUMMARY JUDGMENT (ECF No. 90) will be denied.

It is so ORDERED.

_____/s/_____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March ⅄⅃ , 2023

34